The INSTITUT NATIONAL DES APPELLATIONS D'ORIGINE, Appellant,

v.

VINTNERS INTERNATIONAL COMPANY, INC., Appellee.

No. 91–1332.

United States Court of Appeals, Federal Circuit.

March 26, 1992.

Rehearing Denied April 22, 1992.

Peter M. Brody, of Ropes & Gray, Washington, D.C., argued, for appellant.

Catherine H. Stockell, of Pennie & Edmonds, New York City, argued, for appellee. With her on the brief, were Mercer L. Stockell and Johanna M. Geoghan.

Before RICH, MICHEL, and PLAGER, Circuit Judges.

RICH, Circuit Judge.

This appeal is from the March 19, 1991 decision of the U.S. Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (board) dismissing, with prejudice, The Institut National Des Appellations D'Origine's (INAO) Opposition No. 81,742. INAO opposed Vintners International Company, Inc.'s (Vintners) registration of the trademark CHABLIS WITH A TWIST for "a citrus flavored wine," application Serial No. 73/730,097, filed May 23, 1988. Opposition was based on several grounds including, *inter alia*, that the mark was precluded from registration under §§ 2(a) and 2(e)(2) of the Lanham Act, 15 U.S.C. §§ 1052(a), (e)(2) (1988), and under the trademark mutilation doctrine.[1] Vintners contested INAO's allegations and asserted affirmative defenses, including a defense that INAO lacked standing to maintain the proceeding. On cross-motions for summary judgment, the board denied Vintners' motion for judgment based on INAO's lack of standing and dismissed INAO's opposition on the ground that INAO failed to allege any genuine issue of material fact supporting the allegation that the mark was precluded from registration under §§ 2(a) and 2(e)(2) of the Lanham Act, and under the trademark mutilation doctrine. We affirm.

---

1. INAO's opposition was based on other grounds including §§ 2(d) and (e)(1) of the Lanham Act, 15 U.S.C. §§ 1052(d), (e)(1) (1988). However, these need not be addressed since INAO is not appealing the board's decision with respect to these provisions.

*Background*

INAO is an organization established and existing under the laws of France whose membership consists, in part, of wine growers, wine merchants and representatives from various wine-producing regions and communities within France. One of INAO's functions is to act on behalf of French wine producers and merchants to maintain a system of identifying French wines, brandies, and spirits through the use of "appellations d'origine" (appellations of origin) and to protect against or suppress misuses of those appellations on a worldwide basis. "Chablis," which also refers to a city and geographic region in France approximately 120 miles southeast of Paris, is one such appellation of origin recognized under French law.

On May 23, 1988, Vintners applied to register the trademark CHABLIS WITH A TWIST on the Principal Register for a wine product described as a "citrus flavored wine." Vintners' application for registration was initially rejected by the PTO because the mark CHABLIS WITH A TWIST was found to be merely descriptive under § 2(e)(1). The term "Chablis" was found to be the common name of the goods and the term "twist" was found to be a term commonly used in the beverage industry to denote citrus or fruit flavoring. Accordingly, Vintners disclaimed any exclusive right to use the term "Chablis" apart from the mark as it was shown and explained that the term "with a twist" was not *merely* descriptive because it projects a double meaning (i.e., the alleged descriptive meaning and the meaning relating to the unusual approach to wine by adding a citrus flavoring). The application was thereafter approved and, on July 11, 1989, published in the *Official Gazette* of the PTO for opposition. Vintners sells its wine product under the following label (colors not shown):

**FIGURE 1**

On December 11, 1989, INAO opposed the application alleging, *inter alia,* that the mark CHABLIS WITH A TWIST is geographically deceptive under § 2(a), primarily geographically deceptively misdescriptive under § 2(e)(2), and a mutilation of the actual mark, CALIFORNIA CHABLIS WITH A TWIST, used by Vintners on its labels. As grounds for opposition, INAO relied heavily on the regulations promul-

gated by the Bureau of Alcohol, Tobacco and Firearms (BATF), a United States agency responsible for protecting the public against false or misleading labelling and advertising. 27 U.S.C. § 205(e)-(f) (1988). Among other things, the BATF regulations classify "Chablis" as "a type or class of wine" that has "geographic significance," and prohibit the labelling of a white wine produced anywhere other than the Chablis region of France as "Chablis," unless the place of origin appears "in direct conjunction therewith" and the wine conforms to standards established by the regulations for identity as a Chablis, or to the trade understanding for such class or type. 27 C.F.R. § 4.24 (1991).[2] There is no dispute that Vintners' label complies with the BATF regulations. Vintners submitted the affidavit of Marcy Whitman (the "Whitman affidavit"), Vintners' Project Director, establishing that, in addition to the label shown in Figure 1, the BATF has approved other Vintners advertising and promotional materials containing the CHABLIS WITH A TWIST mark without the term "California" preceding the term "Chablis." For example, the window banner shown in Figure 2 was approved by the BATF when Vintners agreed to place the phrase "California White Wine With Natural Citrus" either above or below the CHABLIS WITH A TWIST mark.[3]

**FIGURE 2**

In support of its motion for summary judgment, INAO submitted the affidavit of Jerome M.P.L. Agostini (the "Agostini affidavit"), a French attorney, to explain

2. Section 4.24 of the BATF regulations provides in relevant part:

(a)(1) A name of geographic significance which is also the designation of a class or type of wine, shall be deemed to have become generic only if so found by the Director.

(2) Examples of generic names, originally having geographic significance, which are designations for a class or type of wine are: Vermouth, Sake.

(b)(1) A name of geographic significance, which is also the designation of a class or type of wine, shall be deemed to have become semi-generic only if so found by the Director. Semi-generic designations may be used to designate wines of an origin other than that indicated by such name only if there appears in direct conjunction therewith an appropriate appellation of origin disclosing the true place of origin of the wine, and if the wine so designated conforms to the standard of identity, if any, for such wine contained in the regulations in this part or, if there be no such standard, to the trade understanding of such class or type.

(2) Examples of semi-generic names which are also type designations for grape wines are Angelica, Burgundy, Claret, Chablis, Champagne, Chianti, Malaga, Marsala, Madeira, Moselle, Port, Rhine Wine (syn. Hock), Sauterne, Haut Sauterne, Sherry, Tokay.

3. As indicated in the affidavit of Richard X. Powers (the "Powers affidavit"), Vintners' Director of Development, the acceptability of the label in Figure 2 was conditioned on the phrase "California White Wine With A Twist" being as conspicuous as the term "Chablis" and he understood the phrase "as conspicuous as the word

INAO's function and how appellations of origin are used in France. Vintners cross-moved to dismiss the opposition under Fed. R.Civ.P. 12(b)(6), or in the alternative, for summary judgment on each ground.

### The Board's Decision

The board granted Vintners' cross-motion for summary judgment on all issues except on the issue of standing wherein the board found in favor of INAO. On the issue of standing, the board, relying on the reasoning set forth in *Jewelers Vigilance Committee, Inc. v. Ullenberg Corp.*, 823 F.2d 490, 2 USPQ2d 2021 (Fed.Cir.1987), found that INAO was a representational organization with a real interest in this proceeding.

Based on the undisputed facts in this case, the board found that the word "Chablis" is the common, descriptive name of a type of wine. Distinguishing between the way the term is used in France and the United States, the board stated that "although the term 'Chablis' is a designation controlled in France by opposer and is lawfully used there only on wines which come from the region known by that name and produced in the manner designated by the opposer, the term is used in the United States as the generic name for a type of wine with the general characteristics of French Chablis, whether or not the grapes from which the wine is made or the wine itself comes from France." Since the word "Chablis" was found to be a generic designation for a type of wine, the Vintners mark could not be primarily geographically deceptively misdescriptive under § 2(e)(2).

The board also rejected INAO's assertions that the BATF regulations mandate that the board find the mark CHABLIS WITH A TWIST is primarily geographically deceptively misdescriptive of Vintners' wines, holding that, although the BATF regulations mandate that the place of origin be identified on a product label in conjunction with "Chablis" when that place is not Chablis, France, they do not make the

term "Chablis" any less generic when used on applicant's wine bottles. The board also rejected INAO's contention that the BATF regulations establish that the term "Chablis" is used and understood in this country to indicate wine from France. Accordingly, the board held that the "inclusion of this generic word as a disclaimed part of a trademark can therefore not be the reason that the mark as a whole is primarily geographically deceptively misdescriptive under section 2(e)(2) of the Act."

Moreover, the board noted that INAO's entire argument ignored the fact that Vintners' mark is CHABLIS WITH A TWIST, not merely the word "Chablis." However, even overlooking the question of whether or not the word "Chablis" in Vintners' mark has the effect of determining the primary significance of the entire mark, the board still concluded the mark CHABLIS WITH A TWIST as a whole was not unregistrable under § 2(e)(2) of the Lanham Act because the term "Chablis" does not misdescribe the goods.

The board also rejected INAO's claim that Vintners' CHABLIS WITH A TWIST mark is geographically deceptive under § 2(a) of the Lanham Act, holding that INAO failed to offer any evidence that, even if the word "Chablis" is misrepresentative of the source of applicant's goods, such misrepresentation would be a material factor in the decision to purchase the goods. Finding that INAO failed to offer any evidence of how the word "Chablis" is perceived in the United States or that it is perceived as descriptive of the geographic origin of the wine, or of whether any such alleged misdescriptiveness is material to the decision to purchase Vintners' wine, the board found that there "is simply no support for opposer's claims" under § 2(a).

Finally, the board rejected INAO's claim that CHABLIS WITH A TWIST is a mutilation of CALIFORNIA CHABLIS WITH A TWIST, as used on Vintners' label, because the merely descriptive word "Califor-

---

chablis" to be construed by the BATF to mean at least half the size of the word "Chablis." Accordingly, the type size of the phrase "California

White Wine With Natural Citrus" should appear larger than that indicated on the label in Figure 2.

nia" is not an integral part of Vintners' mark. The board held that Vintners' compliance with the BATF labeling requirements in no way compels the conclusion that the word "California" is part of its mark.

### Discussion

■ In reviewing the grant or denial of a motion for summary judgment in an opposition or cancellation, this court applies the same standard as the board, namely, the standard of Federal Rule of Civil Procedure 56. *National Cable Television Ass., Inc. v. American Cinema Editors, Inc.*, 937 F.2d 1572, 1576, 19 USPQ2d 1424, 1427 (Fed.Cir.1991). Rule 56(c) provides in pertinent part that summary judgment shall be rendered forthwith if the pleadings and evidence of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The parties filed cross-motions for summary judgment and agree that the material facts in this proceeding are undisputed. The issues to be determined, therefore, turn on interpretations of law.

### Standing

■ Whether INAO has standing under the Lanham Act to represent its members in opposing Vintners' registration depends on whether INAO meets the three-part test for associational standing outlined in *International Union v. Brock*, 477 U.S. 274, 282, 106 S.Ct. 2523, 2529, 91 L.Ed.2d 228 (1986). Under this test, INAO has standing if:

'(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'

*Id.* (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977)).

Vintners does not contest the first and third prongs of the test. Vintners argues that INAO lacks standing under the second prong because the interests INAO seeks to protect are not germane to its purpose. The gist of the argument is that INAO's standing, as a government agency, is limited to that conferred by its authority and purpose under French law outlined by INAO in the Agostini affidavit, which states in relevant part:

15. The I.N.A.O. has statutory powers to defend controlled appellations of origin in France and abroad and to appear before the courts for such defense....

....

21. ... [The I.N.A.O.] has established administrative structures for carrying out its various functions, including defining standards for A.O.C. [controlled appellations of origin] wines, delimiting areas of production, monitoring and enforcing the standards, and suppressing misuses of appellations of origin in France and abroad.

....

30. The I.N.A.O. also has the statutory function and powers, under Article 23 of the Law of 1935, to protect and defend the A.O.C.s abroad. This it does in a number of different ways, which depend in part on the laws and conditions in the foreign countries concerned. The I.N.A.O. seeks, at the international level, to promote and obtain bilateral and multilateral treaties between France and other countries for the protection of A.O.C. and seeks at governmental and international levels to persuade countries, where misuses of A.O.C. are occurring, to enact or enforce laws to prevent such misuse. Also, where misuse is occurring, the I.N.A.O. brings or takes part in legal proceedings to prevent it, such as the instant action.

The Agostini affidavit establishes that one of INAO's purposes is to oppose the registration of trademarks in the United States if it deems it necessary to protect an appellation of origin. This function would reasonably include routine participation in trademark registration proceedings affecting appellations of origin. Thus, INAO meets the second prong of the test for associational standing.

Vintners' argument that INAO lacks standing is strained. According to Vintners, INAO's standing stems from its responsibility to suppress the *misuses* of appellations of origin and, since INAO has conceded that Vintners' "label" comports with the BATF regulations and is lawfully used on its "label," then Vintners is not *misusing* the appellation of origin "Chablis." Therefore, if Vintners' label fully complies with the BATF regulations and there is no *misuse* of the appellation of origin, then INAO has no standing to interfere with the registration of Vintners' trademark.

Vintners' argument is flawed in that it misinterprets what was conceded by INAO. INAO conceded only Vintners' "lawful" use of CALIFORNIA CHABLIS WITH A TWIST on Vintners' labels under the BATF regulations. However, Vintners' use of the trademark in its labeling and advertising in conjunction with the BATF regulations is distinct from Vintners' registration of the trademark CHABLIS WITH A TWIST. INAO alleges that the trademark CHABLIS WITH A TWIST is geographically deceptive under § 2(a), primarily geographically deceptively misdescriptive under § 2(e)(2), and a mutilation of the mark actually used on Vintners' labels. Vintners' argument is directed more towards the merits of the case (i.e., whether it is entitled to registration) rather than to the question of standing.

Accordingly, there being no genuine issue of material fact, we hold that INAO met the required conditions for representational standing.

*Sections 2(a) and 2(e)(2)*

■ Under § 2(e)(2) of the Lanham Act, a mark may not be registered on the Principal Register if the mark, when applied to the goods of the applicant, is primarily geographically deceptively misdescriptive. Whether a mark is primarily geographically deceptively misdescriptive under § 2(e)(2) requires an analysis under a two prong test to establish (1) whether the primary significance of the mark as it is used is a generally known geographic place; and (2) whether the public would make a "goods/place association, i.e., believe that the goods for which the mark is sought to be registered originate in that place." *In re Societe Generale Des Eaux Minerales de Vittel, S.A.*, 824 F.2d 957, 959, 3 USPQ2d 1450, 1452 (Fed.Cir.1987); *In re Loew's Theatres, Inc.*, 769 F.2d 764, 767, 226 USPQ 865, 867 (Fed.Cir.1985); *In re Nantucket, Inc.*, 677 F.2d 95, 98–99, 213 USPQ 889, 892–93 (CCPA 1982). In addition, the word "primarily" in § 2(e)(2) should not be overlooked, for it is not the intent of the federal statute to refuse registration of a mark where the geographic meaning is minor, obscure, remote, or not likely to be connected with the goods. *Nantucket*, 677 F.2d at 99, 213 USPQ at 893.

■ A mark may be established as a geographically deceptive mark under § 2(a) by showing that it is primarily geographically deceptively misdescriptive under § 2(e)(2), and additionally showing that the geographic misrepresentation is material to the decision to purchase the goods so marked. *See In re House of Windsor, Inc.*, 221 USPQ 53, 56–57 (TTAB 1983); *cf. In re Budge Manufacturing Co. Inc.*, 857 F.2d 773, 775, 8 USPQ2d 1259, 1260 (Fed. Cir.1988) (whether the misdescription is likely to affect the decision to purchase).

INAO relies heavily, if not exclusively, on the BATF regulations and the Agostini affidavit to establish that as a matter of law a goods-place association exists with regard to the term "Chablis" when the term is used in connection with wine of that name. First, INAO alleges that the regulations declare that "Chablis" is a name of "geographic significance" that refers to Chablis, France and that the term "Chablis," for a non-French wine, must be deemed to create a misleading goods-place association as a matter of law. Second, INAO argues that, for the same reason, the false association must be deemed material to the purchaser as a matter of law.

■ Although INAO presented evidence to establish that "Chablis" is the name of a region in France and a designation lawfully used in France only on wines coming from that region and produced in a manner designated by INAO, that is not enough to establish that the mark CHABLIS WITH A

TWIST is primarily geographically deceptively misdescriptive. The mark *as a whole* must be perceived by consumers in this country to be the name of a place where the citrus wine product originates or is produced. INAO failed to establish whether the relevant portion of the American public, that portion being consumers of wine and wine products, would perceive the mark CHABLIS WITH A TWIST or even the term "Chablis" to indicate that the product came from the Chablis region of France. Likewise, INAO has completely failed to present evidence to establish the additional requirement under § 2(a) that the alleged geographic misrepresentation would be a material factor in the decision of consumers to purchase Vintners' product.

INAO's argument emphasizes select portions of the BATF regulations indicating that "semi-generic" terms such as "Chablis" have "geographic significance" ignoring the language indicating that such terms also designate "a class or type of wine." Merely because the term "Chablis" may have some geographic significance does not make that geographic significance the "primary" significance of that term, let alone the primary significance of the mark CHABLIS WITH A TWIST. More importantly, it does not establish how the term is understood by American consumers of wine. Nor does it establish that consumers would perceive the mark CHABLIS WITH A TWIST to indicate that Vintners' wine product comes from the Chablis region of France. Finally, it does not establish what would and what would not be a material factor in the decisions of consumers to purchase the product. In light of this, we conclude that INAO has failed to present any evidence sufficient to raise a *genuine* issue of material fact which would preclude a finding of summary judgment under

§§ 2(a) and 2(e)(2) of the Lanham Act. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

■ We agree with the board that there is no genuine dispute as to whether Chablis "is used in the United States as the generic name for a type of wine with the general characteristics of French Chablis." Being generic and, therefore, in the public domain, "Chablis" does not function as a trademark to indicate origin. Support for this "generic" determination is found in the position taken by INAO before the board, the BATF regulations, usage of the term "Chablis" in the marketplace, and in the file histories of trademark registrations including the term "Chablis" submitted in connection with Vintners' arguments.

INAO argued before the board that the mark CHABLIS WITH A TWIST is merely descriptive for the ingredients of Vintners' wine product within the meaning of § 2(e)(1), cannot avoid being a generic designation of the product and, therefore, cannot be registered without showing that the mark has obtained a secondary meaning.[4] As the board reasoned, it "necessarily follows that in order for the mark 'CHABLIS WITH A TWIST' to be generic, the term 'CHABLIS' must be generic by itself."[5]

As a condition to registration of CHABLIS WITH A TWIST, Vintners was required to disclaim any exclusive right to the word "Chablis" because it is the common name of the goods. Similarly, as evidenced by copies of file histories of five trademark registrations of marks for domestic wines, the PTO required the disclaimer of the exclusive right to use "Cha-

---

4. Although INAO does not appeal the board's finding with respect to this argument, we find that the position taken by INAO is evidence that may be used to establish that the term is generic.

5. In its brief submitted on appeal INAO "acknowledges" the ordinary meaning of the term "chablis" as used in the United States when it refers on more than one occasion to "non-French chablis," and to its "historic disagreement with the aspect of [the] BATF's regulation

blis" apart from the marks.[6] In each instance the examining attorney required the goods to be designated as "Chablis," "Chablis wine," or "wine" despite the fact that the wines were domestically produced in New York or California. We find these third-party registrations to be persuasive evidence of the meaning of "Chablis." *See Interstate Brands Corp. v. Celestial Seasonings, Inc.,* 576 F.2d 926, 928, 198 USPQ 151, 153 (CCPA 1978). Such third party registrations show the sense in which the word is used in ordinary parlance and may show that a particular term has descriptive significance as applied to certain goods or services. *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,* 833 F.2d 1560, 1564–65, 4 USPQ2d 1793, 1797 (Fed.Cir. 1987); *United Foods Inc. v. J.R. Simplot Co.,* 4 USPQ2d 1172, 1174 (TTAB 1987).

The BATF regulations, relied on by INAO to establish that a goods-place relationship exists in the term "Chablis," actually lend support to the argument that the term is generic. The BATF regulations define "Chablis" as a "semi-generic" term which is a name of geographic significance and also the designation of a class or type of wine.

We conclude that based on the record no reasonable factfinder could have found the term "Chablis" to be used in the United States as anything other than a generic name for a type of wine with certain general characteristics. Accordingly, we affirm the board's summary judgment decision on the issues under §§ 2(a) and 2(e)(2).

### Trademark Mutilation

■ Finally, in order to achieve its objective of preventing registration of a mark for a wine product containing the word "Chablis" unless there is included *in the registered mark* a specific designation of geographic origin, INAO asserts that Vintners' mark CHABLIS WITH A TWIST is a *mutilation* of Vintners' mark as actually used.

■ "Mutilation" is a concept long recognized as a part of trademark registration case law. *See In re Servel Inc.,* 181 F.2d 192, 195, 37 CCPA 977, 85 USPQ 257, 259–60 (1950). The issue must be decided on the facts of each case. What the invocation of the doctrine here means is that INAO would have this court hold that "California" is part of Vintners' trademark because it appears on the label along with CHABLIS WITH A TWIST and because such appearance is required by BATF regulations. We see no merit in the contention.

McCarthy's *Trademark and Unfair Competition* (2d ed. 1984) § 19:17 at page 908, headed "Mutilation: Registration of less than whole trademark," says that the question is: "what exactly is the 'trademark'?" And further, on page 909:

It all boils down to a judgment as to whether that designation for which registration is sought comprises a separate and distinct "trademark" in and of itself.

The proper forum in which that judgment is to be made is the courts. *Servel,* 181 F.2d at 193, 85 USPQ at 259 (citing *In re Standard Underground Cable Company,* 27 App.D.C. 320 (1906) ("Eclipse" held registrable apart from other matter on the label)).

The evidence in this case, including the label reproduced in Figure 1 of this opinion, shows clearly that "California" is not a part of the trademark. The fact that the BATF regulations require it to appear on the label has nothing whatsoever to do with the question of what is the trademark. The board, which consists of experts in trademark law, believed that it is CHABLIS WITH A TWIST. We are of the same opinion. "California" is, moreover, a geographically descriptive word wholly de-

---

providing that 'Chablis' refers to a 'class or type' of wine."

**6.** The marks are ALMADEN GOLDEN CHABLIS (for chablis), Registration No. 1,360,947, CROWN CHABLIS And Design (for chablis), Registration No. 1,172,527, FLEUR DE CHA-

BLIS (for chablis wine), Registration No. 1,081,-294, CHABLIS VI SIX GRAND OPENINGS (for wine), Registration No. 1,235,408, and CHABLIS VI SIX GRAND OPENINGS (Stylized) (for wine), Registration No. 1,259,593.

void of trademark significance because it cannot distinguish Vintners' product from others. We, therefore, conclude that there is no genuine dispute as to whether there has been any "mutilation."

We deal here only with the issue of registrability and what may be registered in the PTO. It is not our concern or that of the PTO what Vintners must do to comply with the BATF *labelling* requirements.

AFFIRMED.