This Opinion is a
Precedent of the TTAB

Mailed: April 23, 2018

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re American Furniture Warehouse CO*

————

Serial No. 86407531

————

Ellen Reilly of The Reilly Intellectual Property Law Firm
        for American Furniture Warehouse CO.

John D. Dalier, Trademark Examining Attorney, Law Office 106,
        Mary Sparrow, Managing Attorney.

————

Before Ritchie, Shaw, and Lynch,
        Administrative Trademark Judges.

Opinion by Lynch, Administrative Trademark Judge:

## I.    Background

American Furniture Warehouse CO ("Applicant") seeks registration on the

Principal Register of the mark for "retail furniture stores" in

International Class 35.[1] Applicant claims ownership of the following three registrations:

- Registration No. 4326532, which issued on the Principal Register on April 30, 2013 for AMERICAN FURNITURE WAREHOUSE in standard characters for "Computerized on-line retail store services in the field of Furniture; Customer service in the field of retail store services; Discount stores in the field of Furniture; Marketing services, namely, retail store services in the field of furniture; On-line retail store services featuring a wide variety of consumer goods of others; Retail discount store services in the field of furniture; Retail furniture stores; Retail store and on-line retail store services featuring furniture; Retail stores featuring furniture," with a claim of acquired distinctiveness as to the entire mark;

- Registration No. 4390854, which issued on the Principal Register on August 27, 2013 for for "Retail store services featuring furniture and accessories; Retail furniture stores," with a claim of acquired distinctiveness-in-part as to AMERICAN FURNITURE WAREHOUSE; and

- Registration No. 5101213, which issued on the Principal Register on December 13, 2016 for for "Retail furniture stores," with a claim of acquired distinctiveness-in-part as to AMERICAN and FURNITURE.

The Examining Attorney made varying requirements during prosecution of the application, but ultimately issued a final refusal of registration absent a disclaimer

---

[1] Application Serial No. 86407531 was filed September 26, 2014 under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), based on an allegation of first use and use of the mark in commerce at least as early as September 30, 2013. The description of the mark states: "The mark consists of a stylized, curved letter 'A' that begins the word 'AMERICAN'. The letter 'A' in 'AMERICAN' has stripes on the left side and on the right a swooping ribbon design filled with stars and an outer line that turns and dots the letter 'I' with one star. Under the word 'AMERICAN' is the wording 'FURNITURE WAREHOUSE' and under 'AMERICAN FURNITURE WAREHOUSE' is the wording 'LIFESTYLE FURNITURE'."

of the wording AMERICAN FURNITURE WAREHOUSE as primarily geographically descriptive, and of the word FURNITURE from the bottom line of the mark as generic. Earlier in the prosecution of this Application, Applicant submitted a disclaimer of FURNITURE and a statement of acquired distinctiveness-in-part as to AMERICAN FURNITURE WAREHOUSE based on its prior registrations, Registration Nos. 4326532 and 4390854.[2] Applicant subsequently withdrew the disclaimer and Section 2(f)-in-part claim and argued against both grounds for the required disclaimers, but also claimed and continued to argue acquired distinctiveness-in-part, such that the ultimate status of the Section 2(f)-in-part claim is ambiguous.[3]

---

[2] TSDR April 20, 2015 Response to Office Action (Section 2(f)-in-part); TSDR May 12, 2015 Examiner's Amendment (disclaimer of "FURNITURE").

[3] In its September 1, 2015 Response to Office Action, Applicant withdrew the Section 2(f)-in-part claim and the disclaimer and requested that they be deleted, explaining that it had submitted them based on the Examining Attorney's previous position – which had since changed – that the disclaimer and Section 2(f)-in-part claim would put the application in condition for approval to publish for opposition. TSDR September 1, 2015 Response to Office Action; *see also* TSDR January 29, 2015 Office Action. Both the disclaimer and the Section 2(f)-in-part claim were deleted from the TSDR record at that point. TSDR September 9, 2015 "Trademark Snap Shot Amendment & Mail Processing Stylesheet." However, in Applicant's later April 11, 2016 Response to Office Action, after arguing that AMERICAN FURNITURE WAREHOUSE is not primarily geographically descriptive, Applicant stated "Nevertheless, Applicant has submitted a 2(f) disclaimer in part [sic] for 'AMERICAN FURNITURE WAREHOUSE.'" In that same submission in the "Additional Statements Section," Applicant included a Section 2(f)-in-part claim that "AMERICAN FURNITURE WAREHOUSE has become distinctive of the goods/services as evidenced by the ownership on the Principal Register for the same mark for sufficiently similar goods/services of active U.S. Registration No(s). 4326532, 4390854." *Id.* Thus, at that point, the Section 2(f)-in-part claim was reinserted in the TSDR record. TSDR April 12, 2016 "Trademark Snap Shot Amendment & Mail Processing Stylesheet." However, in Applicant's next Response to Office Action dated November 2, 2016, Applicant stated, "Applicant previously submitted a 2(f) disclaimer in part [sic] for 'AMERICAN FURNITURE WAREHOUSE.' This disclaimer has been rejected by the Examiner and is withdrawn by Applicant." TSDR November 2, 2016 Response to Office Action at 1. The Section 2(f)-in-part claim remained in the TSDR record. TSDR November 4, 2016 "Trademark Snap Shot Amendment & Mail Processing Stylesheet." In the January 27,

After the final Office Action maintaining the requirement for a disclaimer of AMERICAN FURNITURE WAREHOUSE and FURNITURE, Applicant appealed. In its Brief, Applicant argues against the substantive grounds for the required disclaimers, but also requests that on appeal, the Board "allow [the mark] to be registered with a 2(F)-in part claim as to 'AMERICAN FURNITURE WAREHOUSE' and a disclaimer as to the term FURNITURE that follows LIFESTYLE."[4] The Examining Attorney states that "Applicant has appealed the Examining Attorney's final rejection of Applicant's claim of acquired distinctiveness as to 'AMERICAN FURNITURE WAREHOUSE' under Trademark Act Section 2(f)."[5] Based on a review of the entire record and briefing, we determine that Applicant has maintained the claim of Section 2(f)-in-part, in the alternative, for purposes of this appeal.

The appeal has been fully briefed.

## II.    Disclaimer Requirements

Under Section 6(a) of the Trademark Act, 15 U.S.C. § 1056(a), an applicant may be required to disclaim an unregistrable component of a mark otherwise registrable. Failure to provide the required disclaimer constitutes a ground for refusing registration. *See In re Stereotaxis Inc.*, 429 F.3d 1039, 77 USPQ2d 1087, 1088-89 (Fed. Cir. 2005). In this case, the Examining Attorney takes the position that AMERICAN

---

2017 final Office Action, the Examining Attorney stated without explanation that "Applicant's claim of acquired distinctiveness as to 'AMERICAN FURNITURE WAREHOUSE' is again rejected," and also noted that Applicant refused to provide the required disclaimer of FURNITURE. TSDR January 27, 2017 Office Action at 1.

[4] 4 TTABVUE 22 (Applicant's Brief).

[5] 6 TTABVUE 3 (Examining Attorney's Brief).

is a geographically descriptive term, and FURNITURE WAREHOUSE is generic, such that as a whole, AMERICAN FURNITURE WAREHOUSE is primarily geographically descriptive. The Examining Attorney also takes the position that FURNITURE is generic and therefore must be disclaimed. Applicant previously disputed this requirement but as of the briefing stage, apparently no longer contests it.

As a threshold matter, we take note of Applicant's Registration No. 4326532 for the mark AMERICAN FURNITURE WAREHOUSE in standard characters, registered under Section 2(f), for services that include those identified in the subject application. This claim of acquired distinctiveness, which was made to overcome a refusal under Section 2(e)(2), can be viewed as a concession by Applicant that the wording itself is not inherently distinctive for those services. *In re Thomas Nelson Inc.*, 97 USPQ2d 1712, 1713 (TTAB 2011). However, in this appeal, Applicant argues that this wording is not primarily geographically descriptive, and we therefore address the issue for completeness and because at least one of Applicant's arguments involves the stylization of its applied-for mark.

### A. Whether AMERICAN FURNITURE WAREHOUSE Is Primarily Geographically Descriptive

Establishing that a term is primarily geographically descriptive under Section 2(e)(2), 15 U.S.C. § 1052(e)(2), requires a showing that:

1. the primary significance of the term in the mark sought to be registered is the name of a place generally known to the public, and

2. the public would make an association between the services and the place named in the mark by believing that the services originate in that place.

*In re Societe Generale des Eaux Minerals de Vittel S.A.*, 824 F.2d 957, 3 USPQ2d 1450, 1451-52 (Fed. Cir. 1987); *In re Hollywood Lawyers Online*, 110 USPQ2d 1852, 1853 (TTAB 2014). The second prong, or services-place association, can be presumed when the services do in fact emanate from the place named in the mark. *Hollywood Lawyers Online*, 110 USPQ2d at 1853; *In re JT Tobacconists*, 59 USPQ2d 1080, 1082 (TTAB 2001) ("[W]here there is no genuine issue that the geographical significance of a term is its primary significance, and where the geographical place named by the term is neither obscure nor remote, a public association of the goods or services with the place may ordinarily be presumed from the fact that the applicant's goods or services come from the geographical place named in the mark."). "Finally, 'the presence of generic or highly descriptive terms in a mark which also contains a primarily geographically descriptive term does not serve to detract from the primary geographical significance of the mark as a whole.'" *Hollywood Lawyers Online*, 110 USPQ2d at 1853-54 (citation omitted).

AMERICAN is defined as "relating to the U.S. or the people who live there."[6] Applicant contends that in its mark, "'AMERICAN' is not a geographic location but a modifier to 'FURNITURE WAREHOUSE.'"[7] However, other than a conclusory assertion that AMERICAN is "arbitrary," Applicant offers no alternative significance

---

[6] TSDR January 27, 2017 Office Action at 24 (macmillandictionary.com).

[7] 4 TTABVUE 14-15 (Applicant's Brief).

of the term, and we cannot find one in the record. Thus, we find that the primary significance of AMERICAN is geographic, the adjective form of AMERICA, a place generally known to the American public. *See In re Monograms Am., Inc.*, 51 USPQ2d 1317, 1320 (TTAB 1999) (affirming Section 2(e)(2) refusal of MONOGRAMS AMERICA where "applicant has produced no evidence of other potential connotations for the term AMERICA standing alone"). Applicant asserts that the "bare possibility" that the services could emanate from an American company does not establish the requisite services-place association.[8] However, as reflected in its specimen of use, Applicant's retail furniture stores are located in the United States. Applicant's website also states that it has "the largest selection of furniture under one roof in the United States," and has "thirteen locations throughout Colorado and Arizona."[9] We find that consumers would believe that Applicant's services originate in America. *See In re BankAmerica Corp.*, 231 USPQ 873, 875 (TTAB 1986) ("Applicant has given no persuasive explanation why its services identified by the mark … would not be associated with the United States. Accordingly, for applicant's services which concededly emanate from this country, a public association of those services with America may be presumed.").

As for the FURNITURE WAREHOUSE wording, Applicant's identified services are retail furniture stores, and the record includes definitions of WAREHOUSE as "[a] place in which goods or merchandise are stored" and as "[a] large, usually

---

[8] *Id.* at 15.

[9] TSDR January 27, 2017 Office Action at 21 (afw.com).

wholesale shop."[10] The Examining Attorney supplemented these definitions with websites of some third-party retail furniture stores using "Furniture Warehouse," although we observe that most appear to use the term in the manner of a mark or as a trade name.[11] However, in one example, the website of Express Furniture Warehouse describes its business as "Your Discount Furniture Warehouse" and invites consumers to "Come into one of our warehouses…."[12] In addition, the record includes several third-party registrations of marks that include the term FURNITURE WAREHOUSE in connection with retail furniture store services in which the registrants disclaimed FURNITURE WAREHOUSE.[13] The registrations are not on the Supplemental Register or under Section 2(f), such that the disclaimers do not necessarily point to genericness. However, "'[s]uch third party registrations show the sense in which the word is used in ordinary parlance and may show that a particular term has descriptive significance as applied to certain goods or services," in this case with retail furniture store services. *See In re Box Solutions Corp.*, 79 USPQ2d 1953, 1955 (TTAB 2006) (quoting *Institut Nat'l Des Appellations D'Origine v. Vintners Int'l Co.*, 958 F.2d 1574, 22 USPQ2d 1190, 1196 (Fed. Cir. 1992)).

According to Applicant, the definition of WAREHOUSE does not encompass "retail furniture stores," and the word merely suggests its large stock of furniture and

---

[10] TSDR June 24, 2015 Office Action at 2 (*American Heritage Dictionary*).

[11] TSDR October 9, 2015 Office Action at 2-6; TSDR January 27, 2017 Office Action at 14-18.

[12] TSDR January 27, 2017 Office Action at 17 (expressfurniturewarehouse.com).

[13] TSDR January 27, 2017 Office Action at 2-11.

"lower prices, such as those one would expect from a wholesale shop."[14] Presumably, Applicant is attempting to draw a distinction between its retail services and wholesale services that may be typical of certain warehouse stores. However, the meaning of FURNITURE WAREHOUSE encompasses Applicant's own characterization of its services as a shop with a large stock of furniture at wholesale prices. One definition in the record indicates that a warehouse can be a place in which merchandise is stored, and Applicant's website promoting its retail furniture stores shows the following warehouse setting, presumably storing the furniture it sells:

 



---

[14] TSDR September 1, 2015 office Action at 1.

Another definition in the record indicates that a warehouse refers to a large shop that *usually* sells at wholesale, thereby also including a large retail shop. Also, third-party use evidence shows the term used in connection with *retail* furniture stores, and the terms have been disclaimed by others in connection with *retail* furniture store services. Thus, this second definition of WAREHOUSE also seems to encompass Applicant's retail furniture stores.

We find FURNITURE WAREHOUSE to be "the common descriptive name of a class of goods or services." *In re Cordua Rests.*, 823 F.3d 594, 118 USPQ2d 1632, 1634 (Fed. Cir. 2016) (citations omitted). We agree with the Examining Attorney that this term is generic for a class of retail furniture stores, such that as a whole, the wording AMERICAN FURNITURE WAREHOUSE qualifies as primarily geographically descriptive. *See In re Wada*, 194 F.3d 1297, 52 USPQ2d 1539, 1540 (Fed. Cir. 1999) (affirming Board's finding that in the mark NEW YORK WAYS GALLERY "the addition of the words WAYS GALLERY to NEW YORK did not detract from the primary geographic significance of the mark"); *In re Wine Soc'y of Am., Inc.*, 12 USPQ2d 1139, 1141-42 (TTAB 1989) (THE WINE SOCIETY OF AMERICA deemed primarily geographically descriptive where THE WINE SOCIETY immediately conveys to the public the nature of applicant's organization and OF AMERICA merely indicates the geographic origin of the wine society's services and activities).

B. Whether Applicant's Mark Is Unitary

Applicant argues that no disclaimer of AMERICAN FURNITURE WAREHOUSE or FURNITURE WAREHOUSE should be required because its mark,

, is unitary. However, other than referring to its prior Registration No. 4390854 "incorporating the design," Applicant provides no explanation why the elements of its mark are not separable for purposes of a disclaimer. Also, two of Applicant's prior registrations of similar marks, on which Applicant heavily relies in this case, work against its claim of unitariness. Registration No. 4390854,

, contains a claim of acquired distinctiveness-in-part as to AMERICAN FURNITURE WAREHOUSE and Registration No. 5101213,

, contains a claim of acquired distinctiveness-in-part as to AMERICAN and FURNITURE. These claims of acquired distinctiveness-in-part signal that these marks are not unitary in nature, because "if a mark is unitary for purposes of avoiding a disclaimer, a claim of § 2(f) in part would generally not be appropriate since the elements are so merged together that they cannot be regarded as separable." TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 1212.02(f)(ii) (Oct. 2017). In the mark in the subject application, we find the elements of the mark as a whole "not so merged together that they cannot be regarded as separate." *Dena Corp. v. Belvedere Int'l Inc.*, 950 F.2d 1555, 21 USPQ2d 1047, 1052 (Fed. Cir. 1991).

C. Acquired Distinctiveness of AMERICAN FURNITURE WAREHOUSE

While the Examining Attorney insists that any Section 2(f)-in-part claim must be limited to AMERICAN, with a disclaimer of FURNITURE WAREHOUSE, the only explanation for this requirement was the alleged genericness of FURNITURE WAREHOUSE. The Examining Attorney does not argue that the entire phrase AMERICAN FURNITURE WAREHOUSE is incapable of source-indicating significance. *Cf. In re Bee Pollen from England Ltd.*, 219 USPQ 163, 166 (TTAB 1983) ("We conclude that 'BEE POLLEN FROM ENGLAND' is incapable of distinguishing the bee pollen of one manufacturer or importer of bee pollen from England from that of another."). Rather, the Examining Attorney contends that the phrase as a whole is primarily geographically descriptive.

Examination policy set forth in the TMEP provides that "[a]n applicant may claim that a geographic component of a mark has acquired distinctiveness under § 2(f). Thus, if the examining attorney requires a disclaimer of matter that is primarily geographically descriptive under § 2(e)(2), the applicant may seek to overcome the disclaimer requirement by submitting a showing that the geographic component has acquired distinctiveness under § 2(f)." TMEP § 1210.07(b). In this case, Applicant seeks to overcome the disclaimer requirement for AMERICAN FURNITURE WAREHOUSE by claiming acquired distinctiveness as to that phrase. The appropriate claim of acquired distinctiveness-in-part depends on which wording consumers allegedly have come to view as a source indicator for Applicant, in this

case based on the marks in Applicant's prior registrations. As explained in an example in TMEP § 1212.02(f)(ii)(B):

> if the mark is NATIONAL CAR RENTAL combined with an inherently distinctive design element, and the applicant can show acquired distinctiveness as to the entire wording, the proper § 2(f) statement is § 2(f) in part as to the wording NATIONAL CAR RENTAL with a separate disclaimer of CAR RENTAL. In these examples, it would be improper to limit the § 2(f) statement to the word NATIONAL because the applicant is not claiming acquired distinctiveness as to NATIONAL, but rather as to the wording NATIONAL CAR RENTAL.

The Examining Attorney erroneously takes the position that the alleged genericness of FURNITURE WAREHOUSE means that it cannot be part of the claim of acquired distinctiveness. While a generic term standing alone certainly cannot acquire distinctiveness, *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.,* 782 F.2d 987, 228 USPQ 528, 530 (Fed. Cir. 1986), and cases cited therein, as in the NATIONAL CAR RENTAL example, the generic term may be included in the claim of acquired distinctiveness as long as an accompanying disclaimer of the generic term is provided.

Apart from the mistaken contention that the genericness of FURNITURE WAREHOUSE precludes its inclusion in a claim of acquired distinctiveness, the Examining Attorney made no other challenge to the sufficiency of the claim of acquired distinctiveness-in-part.[15] The Examining Attorney did not, for example, argue that because of its nature or common use, AMERICAN FURNITURE WAREHOUSE should be subject to a higher standard of proof of acquired

---

[15] 6 TTABVUE 15-18 (Examining Attorney's Brief).

distinctiveness. Given that we do not have such a contention before us, pursuant to Trademark Rule 2.41(a)(1), 37 C.F.R. § 2.41(a), we accept Applicant's prior Registration Nos. 4326532 and 4390854, as sufficient evidence of acquired distinctiveness-in-part of AMERICAN FURNITURE WAREHOUSE. Nonetheless, as noted above, we agree with the Examining Attorney that FURNITURE WAREHOUSE constitutes a generic term for retail furniture stores, and therefore it must be disclaimed.

### D. Disclaimer of FURNITURE

As for the required disclaimer of FURNITURE that appears on the bottom line of

Applicant's mark  , Applicant offers no argument against the requirement and actually requests that its mark be registered with "a disclaimer as to the term FURNITURE that follows LIFESTYLE."[16]

## III. Conclusion

In closing, we acknowledge, as Applicant has pointed out, that its prior registrations "have registered in the past without disclaimers."[17] While we recognize that "consistency is highly desirable," *In re Omega SA*, 494 F.3d 1362, 83 USPQ2d 1541, 1544 (Fed. Cir. 2007), consistency in examination is not itself a substantive rule of trademark law, and a desire for consistency with the decisions of prior examining attorneys must yield to proper determinations under the Trademark Act and rules.

---

[16] 4 TTABVUE 22 (Applicant's Brief) and 7 TTABVUE 8 (Applicant's Reply Brief).

[17] 7 TTABVUE 6 (Applicant's Reply Brief); *see also* 4 TTABVUE 13 (Applicant's Brief).

*See In re Cordua Rests.,* 118 USPQ2d at 1635. The Board must assess each mark on its own facts and record. *In re Nett Designs Inc.,* 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001).

Although AMERICAN FURNITURE WAREHOUSE is primarily geographically descriptive, we reverse the requirement that the entire term be disclaimed, instead accepting Applicant's claim of Section 2(f)-in-part as to the wording AMERICAN FURNITURE WAREHOUSE, as long as Applicant submits a disclaimer of the generic portion, FURNITURE WAREHOUSE. The requirement that Applicant disclaim the second appearance of the word FURNITURE in the mark also is affirmed.

**Decision**: The refusal to register Applicant's mark is affirmed. However, if Applicant submits the required disclaimer of FURNITURE WAREHOUSE and FURNITURE to the Board within 30 days,[18] this decision will be set aside as to the affirmance of the disclaimer requirements, and the application then shall proceed to publication. *See* Trademark Rule 2.142(g), 37 C.F.R. § 2.142(g) (allowing for entry of a disclaimer after a decision on appeal).

---

[18] The proper format for the disclaimer is: "No claim is made to the exclusive right to use 'FURNITURE WAREHOUSE' and 'FURNITURE' apart from the mark as shown." *See* TMEP § 1213.08(a)(i).