**In re CHEMICAL DYNAMICS, INC.**

No. 87–1407.

United States Court of Appeals,
Federal Circuit.

Feb. 18, 1988.

McPherson D. Moore, Rogers, Howell, Moore & Haferkamp, St. Louis, Mo., argued for appellant.

Albin F. Drost, Asst. Sol., Office of the Sol., Arlington, Va., argued for appellee. With him on the brief were Joseph F. Nakamura, Sol. and Fred E. McKelvey, Deputy Sol.

Before FRIEDMAN, SMITH, and MAYER, Circuit Judges.

FRIEDMAN, Circuit Judge.

This is an appeal from a decision of the Trademark Trial and Appeal Board (Board) refusing registration of a trademark consisting of a portion of a registered mark, on the ground that the portion sought to be registered did not create a separate commercial impression. We affirm.

## I

The appellant, Chemical Dynamics, Inc., markets plant fertilizer under the following registered trademark:

Chemical Dynamics also separately has registered on the Principal Register (1) the background picture of the watering can, medicine dropper and droplet, and (2) the words "7 DROPS."

Chemical Dynamics sought to register the medicine dropper and droplet as a separate mark. The examining attorney refused registration and the Board affirmed on the ground that the dropper and droplet did not create a separate commercial impression and that to separate them would involve mutilation of the mark as actually used. 37 C.F.R. § 2.51(a) (1987).

The Board noted that

one may register a composite mark in connection with goods and/or services and, provided each of the elements per-

forms a trademark function in and of itself, each may be registered for the goods or services on which it is used. Although the Board agreed that "7 DROPS" "create[d] a commercial impression separate and apart from that engendered by the eyedropper and watering can design," it held that the eyedropper and watering can were not separable elements. The Board stated:

[T]he eyedropper intersects with the handle of the watering can and the drop of water [sic] is shown going into the watering can. We believe this clearly constitutes a unitary mark which creates a single commercial impression and that to try to separate out the eyedropper portion of the mark results in an impermissible mutilation.

## II

■ A. The cases determining whether a portion of a trademark is separately registrable generally have dealt with background designs that are used in conjunction with word marks. Professor McCarthy states the general rule as follows: "A background design which is always used in connection with word marks must create a commercial impression on buyers separate and apart from the word marks for the design to be protectable as a separate mark." 1 J.T. McCarthy, *Trademarks and Unfair Competition* 200 (2d ed. 1984) (footnote omitted). In deciding whether the design background of a word mark may be separately registered,

the essential question is whether or not the background material is or is not *inherently distinctive*.... If the background portion is inherently distinctive, no proof of secondary meaning need be introduced; if not, such proof is essential.

*In re E.J. Brach & Sons*, 256 F.2d 325, 327, 118 USPQ 308, 310 (CCPA 1958) (emphasis in original). *See also In re Schenectady Varnish Co.*, 280 F.2d 169, 170, 126 USPQ 395, 396 (CCPA 1960) (unnecessary to determine whether design is intrinsically distinctive when evidence is sufficient to show that the design, apart from the word, has

become distinctive), and *In re National Inst. for Automotive Serv. Excellence*, 218 USPQ 744, 745 (TTAB 1983) (common shapes do not indicate origin of goods absent a showing of secondary meaning in the design) (quoting *Permatex Co. v. California Tube Prods., Inc.*, 175 USPQ 764, 766 (TTAB 1972)).

The present case, however, does not involve an attempt to register the background separately from the word. The appellant already has done that by registering a mark consisting of the entire background, namely, the dropper, the droplet and the can, separately from the words "7 DROPS" shown on the can. Here the appellant is seeking to register separately a part of the background material: the dropper and droplet but not the can with which those two items are displayed. Whether it may do so is a question of first impression in this court.

In deciding that question, we apply the same standard that is used in deciding whether the background portion of the mark may be registered separately from the word portion. As the Board stated in the present case, the background portion is registrable only if it "performs a trademark function in and of itself." As Professor McCarthy states, "It all boils down to a judgment as to whether that designation for which registration is sought comprises a separate and distinct 'trademark' in and of itself." 1 J.T. McCarthy, *Trademarks and Unfair Competition* 909 (2d ed. 1984).

In order to obtain registration of a part of the background portion of a mark, the applicant therefore must show that the portion sought to be registered creates a separate and distinct commercial impression, which thereby performs the trademark function of identifying the source of the merchandise to the customers.

B. The Board properly applied this principle in refusing to register the appellant's dropper and droplet design as a separate mark.

The only evidence in the record bearing on this issue is a declaration by the appellant's vice president that he and the appellant

believe that the mark that is the subject of this application has become distinctive, as applied to applicant's goods as described in the application, by reason of substantially exclusive and continuous use thereof as a mark of applicant in commerce that may be lawfully regulated by Congress, for at least the five years next preceding the date of the filing of this application[.]

The vice president's conclusory statement was insufficient to establish that the dropper and droplet created a distinct commercial impression. It is unnecessary to decide whether, as the Commissioner contends, this statement is not properly before us on this issue because it was made in reference to an earlier rejection that the examiner withdrew.

The declaration does not state the factual basis, if any, for the declarant's belief that the dropper and droplet design "has become distinctive." There are no facts from which it could be inferred that customers or the trade generally so view that separate portion of the background design. Although the vice president refers to the "substantially exclusive and continuous use" of the dropper and droplet as a mark for five years, he does not state that the dropper and droplet were so used separately rather than as part of the entire background or the broad mark consisting of the background and the words "7 DROPS."

As the Board pointed out, "the eyedropper intersects with the handle of the watering can and the drop of water [sic] is shown going into the watering can." The three elements of the background—the dropper, the droplet, and the watering can—are interrelated elements of a single unified design. We agree with the Board that these elements constitute "a unitary mark which creates a single commercial impression and that to try to separate out the eyedropper portion of the mark results in an impermissible mutilation."

The decision of the Board is

AFFIRMED.