Paper No. 10
CEW

THIS DISPOSITION IS CITABLE
AS PRECEDENT OF THE TTAB          MAY 99

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

In re Miller Sports, Inc.
_____

Serial No. 75/143,020
_____

Bradley P. Heisler, Esq. for applicant.

Rudy R. Singleton, Trademark Examining Attorney, Law Office 109 (Deborah S. Cohn, Managing Attorney).
_____

Before Simms, Seeherman and Walters, Administrative Trademark Judges.

Opinion by Walters, Administrative Trademark Judge:


Miller Sports, Inc. seeks registration of the mark shown below for "in-line skates, ice skates and frames for skates."[1]

_____

[1] Serial No. 75/143,020, in International Class 28, filed July 31, 1996, based on use of the mark in commerce, alleging first use and first use in commerce on October 1, 1994.

The Examining Attorney has finally refused registration on the ground that the specimens, consisting of several identical labels, do not show use of the mark as it appears in the drawing. The Examining Attorney's position is that the mark in the drawing is an incomplete representation, *i.e.*, a mutilation, of the mark as used on the specimens. The label submitted as a specimen is reproduced below.

Applicant has appealed. Both applicant and the Examining Attorney have filed briefs, but an oral hearing was not requested. We affirm the refusal to register.

The sole issue before us is whether the mark, as it appears in the drawing of record in the application, is a mutilation of the mark as used, as evidenced by the specimens of record.

The Examining Attorney contends that the mark in the drawing consists of a design forming the letter "M" ("M and skater design"); that the M and skater design as shown in the specimens is an integral part (*i.e.*, the first letter) of the word "Miller"; that, except for the skater design

forming the initial stroke of the "M," the "M" appears on the label in the same font and color as the remaining portion of the word "Miller"; and that, therefore, the design shown in the drawing does not create a separate and distinct commercial impression because it appears on the specimens as part of the word "Miller."

In support of its position that the mark in the application drawing creates a separate and distinct commercial impression, applicant submitted one of its brochures advertising its skates and accessories, namely, caps, T-shirts and a skate bag. While all of the accessories have, as ornamentation, the same design appearing on the labels submitted as specimens, the backs of the T-shirts also show, as ornamentation, the design which is the applied-for mark herein. Applicant contends that "[c]ompanies such as applicant often sell accessories such as hats and shirts ornamented with their marks to customers who enjoy their primary goods [and] [c]ustomers buy the accessories because they identify with the marks placed prominently on the accessories." (Applicant's brief, p. 7.) Applicant concludes that, therefore, its applied-for mark "is used alone to decorate shirts because [it] has created a commercial impression on [applicant's] skates customers separate from the term 'Miller.'"

Citing the case of *Institut National des Appellations D'Origine v. Vintners Int'l. Co., Inc.*, 954 F.2d 1574, 22 USPQ2d 1190 (Fed. Cir. 1992) (CHABLIS WITH A TWIST held to be registrable separately from "California Chablis with a Twist"), applicant contends the following:

> [T]he term "Miller" is a very common surname in the United States.  Hence, the word "Miller" is not inherently capable of creating a strong and distinctive commercial impression on customers.  Rather, it is the distinctive portion of the specimens, the "M and design" mark, which functions as a trademark and creates the commercial impression separate and distinct from the term "Miller."

(Applicant's brief, p.6.)

Trademark Rule 2.51(a)(1) provides, in part, that "the drawing of the trademark shall be a substantially exact representation of the mark as used on or in connection with the goods[.]"  It is well settled that an applicant may apply to register any element of a composite mark if that element, as shown in the record, presents a separate and distinct commercial impression which indicates the source of applicant's goods or services and distinguishes applicant's goods or services from those of others.  *See, e.g., In re Chemical Dynamics Inc.*, 839 F.2d 1569, 5 USPQ2d 1828 (Fed. Cir. 1988); and *Institut National des Appellations D'Origine v. Vintners Int'l Co., Inc., supra* at 1197 (Fed. Cir. 1992), *citing In re Servel, Inc.*, 181

F.2d 192, 85 USPQ 257 (CCPA 1950); *In re Berg Electronics, Inc.*, 163 USPQ 487 (TTAB 1969); *In re Tekelec-Airtronic*, 188 USPQ 694 (TTAB 1975); *In re Lear Siegler, Inc.*, 190 USPQ 317 (TTAB 1976); and *In re San Diego National League Baseball Club, Inc.*, 224 USPQ 1067 (TTAB 1983). *See also, Trademark Manual of Examining Procedure*, sections 807.14(a) and 807.14(b) and cases cited therein.

In this case, it is our view that the elements asserted by the Examining Attorney to be the mark, the word "Miller" with the design of a skater as the initial stroke in the letter "M", are so merged together in presentation that the M and skater design cannot be regarded as a separable element creating a separate and distinct commercial impression. The word "Miller" flows from the initial M and skater design, and the M and skater design is an integral part of the word "Miller." We find that the applied-for mark, M and skater design, does not form a commercial impression separate and distinct from the entire word "Miller". Therefore, the applied-for mark, M and skater design, as used on the specimens, does not function as a mark for the identified goods in and of itself. As such, it is a mutilation of the mark as depicted on the specimens.

We are not persuaded otherwise by applicant's arguments. While the brochure submitted by applicant shows an advertisement indicating that applicant offers T-shirts with the applied-for mark as ornamentation thereon, this brochure does not demonstrate use of the applied-for mark on the goods identified in this application. Further, we find applicant's contentions regarding the applied-for mark on T-shirts to be unavailing. Applicant is essentially arguing that it would not use the applied-for mark on accessories such as T-shirts if the applied-for mark did not function as a mark for applicant's primary products, skates. This contention assumes, rather than proves, that the applied-for mark is perceived as a mark separate and apart from the mark shown on the labels submitted as specimens. Nor do we find the facts herein analogous to the facts in *Institut National des Appellations D'Origine v. Vintners Int'l. Co., Inc., supra*. Rather than omitting a geographically descriptive adjective which appeared on the wine label involved therein in smaller print and on a different line from the applied-for mark, the case before us involves a design that comprises the initial letter of a single word. It is immaterial that the word may be a surname.

*Decision:*  The refusal to register on the ground that the specimens do not evidence use of the mark in the application is affirmed.

R. L. Simms

E. J. Seeherman

C. E. Walters
Administrative Trademark Judges,
Trademark Trial and Appeal Board