THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: July 3, 2008

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————

**Trademark Trial and Appeal Board**

————

In re Yale Sportswear Corporation

————

Application Serial No. 78653373

————

Maurice U. Cahn of Cahn & Samuels, LLP, for Yale Sportswear Corporation.

Ada P. Han, Examining Attorney, Law Office 106, (Mary I. Sparrow, Managing Attorney).

————

**Before Holtzman, Rogers, and Mermelstein, Administrative Trademark Judges.**

**Opinion by Mermelstein, Administrative Trademark Judge:**

Yale Sportswear Corporation filed an application for registration of the mark **UPPER 90** (in standard characters) for "clothing, namely, athletic jerseys, t-shirts, shirts, tanktops, pants, shorts, sweatsuits, sweatshirts, sweatpants and team uniforms" in International Class 25.[1]

On December 12, 2006, following publication for opposition and issuance of a notice of allowance, applicant filed a statement of use pursuant to Trademark Rule 2.88. Upon examination of the statement of use, the examining

---

[1] Filed June 17, 2005, alleging a *bona fide* intent to use the mark in commerce under Trademark Act § 1(b); 15 U.S.C. § 1051(b).

attorney found that the drawing was not a substantially exact representation of the mark as used.  Trademark Rule 2.51(a).  The examining attorney issued and ultimately made final a requirement for substitute specimens.

Applicant and the examining attorney have filed briefs.  We affirm.

The specimen of use filed by applicant indicates use of the mark with a degree symbol following "90" so that the mark appears as **Upper 90°**.  The relevant part of the specimen is reproduced below:[2]



---

[2] The specimen is a photograph of a hang tag affixed to what appear to be a pair of athletic shorts.  Although the specimen comprised an entire image of the shorts, we have reproduced only the area with the hang tag.

**Arguments**

It is the examining attorney's contention that the mark used on the specimen conveys a different commercial impression from the mark depicted in the drawing:

> The degree symbol "°" and the term "upper 90" as presented on the specimen are interrelated elements and are not separable elements that would constitute separate and distinct commercial impressions apart from each other.
>
> * * *
>
> To add the degree symbol would result in the reading of the mark as "upper ninety degrees," This would change the connotation of the mark, as the degree symbol changes the meaning of the term "90," as "90 degrees" could now refer to a specific temperature or, as applicant would prefer, to an angle. Regardless, the degree symbol changes the significance and connotation of the term "90."
>
> * * *
>
> However, without specialized knowledge, the original applied-for mark, "Upper 90," would impart no such connotation of temperature or angle with the addition of the degree symbol.

Ex. Att. Br. at 2-5.

Applicant disagrees,

> The Examining Attorney presented no evidence regarding how the mark as sought to be registered fails to maintain the essential characteristics and commercial impression shown in the specimen. The Examiner merely concluded that "...the addition of the degree symbol significantly changes the commercial impression of the mark, as the mark would now connote very hot weather in the upper 90 degrees."

3

Appl. Br at 5.  During examination and in its brief,
applicant argued that

> the addition of "°" (a superscripted
> degree symbol) did not constitute a
> material alteration of the mark of the
> drawing.  Applicant also produced two
> declarations, one from Applicant's
> marketing director and the other from a
> soccer coach and player to establish
> that in the soccer world, the ordinary
> consumer of the goods in this case, the
> addition of "°" to UPPER 90 would not
> constitute a material alteration.

Appl. Br. at 3.

### Applicable Law

"In an application under section 1(b) of the Act, ...
once ... a statement of use under § 2.88 has been filed, the
drawing of the mark must be a substantially exact
representation of the mark as used on or in connection with
the goods and/or services."  Trademark Rule 2.51(b).  If the
drawing is not a complete representation of the trademark,
*i.e.*, if the drawing includes less than the mark which is
actually used, registration must be refused.  *See generally*
Trademark Manual of Examining Procedure § 807.12(d) (5th ed. 2007).
But this principle raises an obvious question: what mark is
applicant actually using?  The answer is sometimes not
clear, because it is not at all unusual for specimens to
comprise multiple trademarks, artwork, and other matter,
whether registrable or not.

4

Needless to say, it is up to the applicant to choose what it seeks to register. But what applicant seeks to register must not only be in use, it must make a distinct commercial impression as used. *In re 1175856 Ontario Ltd.*, 81 USPQ2d 1446, 1448 (TTAB 2006)("[I]t is well settled that an applicant may seek to register any portion of a composite mark if that portion presents a separate and distinct commercial impression....."). That is, the mark as actually used must not be so entwined (physically or conceptually) with other material that it is not separable from it in the mind of the consumer. *In re Chem. Dynamics Inc.*, 839 F.2d 1569, 5 USPQ2d 1828, 1830 (Fed. Cir. 1988).

**Discussion**

We note at the outset that both applicant and the examining attorney have confused the issue in this appeal by discussing whether the drawing in this application could be amended. The drawing in a trademark application may not be amended if the amendment constitutes a "material alteration" of the drawing in the application. Trademark Rule 2.72. However, the "material alteration" standard is not the issue in this case because applicant has not attempted to amend its drawing.[3] We look instead to the requirement set out in

---

[3] Although the examining attorney advised applicant in her first office action that an amendment of the drawing to match the specimens would constitute a material alteration of the mark in the drawing, applicant was not prohibited from proffering such an amendment. The purpose of such an advisory is to indicate the

Trademark Rule 2.51(b), that "the drawing of the mark must be a substantially exact representation of the mark as used on ... the goods...."[4]

As shown on the specimens of record, applicant is using the mark **UPPER 90°**, although it seeks to register only **UPPER 90**. The question is whether applicant's use supports such a registration. To put it succinctly, "[i]t all boils down to a judgment as to whether that designation for which registration is sought comprises a separate and distinct 'trademark' in and of itself." *Institut des Appellations d'Origine v. Vintner's Int'l Co., Inc.*, 958 F.2d 1574, 22 USPQ2d 1190, 1197 (Fed. Cir. 1992); *see also Chem. Dynamics*,

---

USPTO's preliminary opinion that such an amendment would be futile, thus saving the time and resources of both the Office and the applicant. But if applicant wished to proffer such an amendment, so as to preserve the issue for possible appeal, it was not prevented from doing so.

[4] Even if applicant had filed a proposed amendment to its drawing, we agree with the examining attorney that the amendment would almost surely have been (properly) refused as a material alteration. Although we cannot rule on a drawing which has not been submitted, we note that the addition of a drawing element which would require a further search is generally held to constitute a material alteration. *See In re Pierce Foods Corp.*, 230 USPQ 307, 308-09 (TTAB 1986). Moreover, as discussed below, UPPER 90 and UPPER 90° are significantly different in connotation, such that an amendment from the former to the latter would not create the impression of being essentially the same mark, and would require republication if raised later in prosecution. *In re Hacot-Colombier,* 105 F.3d 616, 620, 41 USPQ2d 1523, 1526 (Fed. Cir. 1997), *quoting Visa Int'l Serv. Ass'n v. Life-Code Sys., Inc.*, 220 USPQ 740, 743-44 (TTAB 1983).
[4] The "substantially exact" standard is more stringent than the "material alteration" standard; in other words, in some situations, a drawing that is not a substantially exact representation of the mark as used may nonetheless be amended to agree with such use, so long as the amendment does not materially alter the mark in the drawing. *See generally* TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP), §§ 807.12-807.13 (5th ed. 2007).

5 USPQ2d at 1829-30.  Thus we must consider whether **UPPER 90** makes a "separate and distinct commercial impression" from **UPPER 90°** as it appears in the specimens.

Although the degree symbol in applicant's mark is not physically large, we find that it nonetheless substantially changes the overall impression of the mark.  Without the degree symbol, it is unclear what the "90" in the drawing might refer to.  However, when viewed on applicant's specimens of use, the degree symbol in the mark would clearly be perceived as modifying the preceding number, making clear that its meaning is "ninety degrees," indicating that it refers to either an angle or a temperature.  As such, the mark might possibly suggest to the potential purchaser that applicant's sports clothing is made for playing in especially hot weather, or indeed that the mark refers to an angle, as applicant contends.

Thus, the mark in the specimen has a different connotation, would be pronounced differently ("upper ninety" vs. "upper ninety degrees,") and looks slightly different than the mark sought to be registered.  The degree symbol in this case clearly adds to the meaning of the mark in the application.  Our conclusion is therefore that UPPER 90 does not form a "separate and distinct" commercial impression. It cannot be severed from the degree symbol without altering

the meaning, pronunciation, and, to some extent, the appearance of the mark.

Applicant argues that the mark is a reference to the upper corners (*i.e.*, 90 degree angles) of a soccer goal, (apparently a particularly difficult spot to defend), and that its customers would understand the mark in the drawing to be the equivalent of the mark as used in commerce. In support of this argument, applicant has submitted two declarations, one from Marie E. Nemphos, applicant's Vice-President of Marketing,[5] and one from Jennifer Harrison, a soccer coach who is a "long-standing purchaser of soccer oriented equipment and clothing."

In her declaration, Ms. Nemphos states that

> 4.  In the field of athletics, and particularly soccer, the expression UPPER 90 is well known as referring to

---

[5] There is a page or pages missing from Ms. Nemphos' declaration. What is in the file consists of one page with the first 7 full, numbered paragraphs. Paragraph 8 ends with an incomplete sentence and is not continued on the next (or any other) page. No exhibits to the declaration appear in the file. While the examining attorney did not specifically point out the obviously incomplete declaration, she did note in her final Office action that the attachments referenced in Ms. Nemphos' declaration did not appear in the file. This should have alerted applicant to the fact that the record was not complete. Although the missing declaration pages and exhibits could have been submitted prior to appeal, *see* Trademark Rule 2.64(b), applicant did not avail itself of this option to correct the record.
  Both Ms. Nemphos' and Ms. Harrison's declarations were filed electronically, attached to applicant's June 12, 2007, response to the first (SOU) Office action. Electronically-submitted correspondence is deemed filed upon receipt by the USPTO. Trademark Rule 2.195(a)(2). Because the records of the Office do not indicate receipt of the entire declaration, we cannot consider it to have been filed. Nonetheless, we have given applicant the benefit of the doubt and considered the single page of Ms. Nemphos' declaration despite the lack of a signature.

the upper corners (the upper 90 degrees) of the goal.

5. The degree symbol has nothing to do with temperature in UPPER 90°.

7. Use of the UPPER 90 expression is not limited to soccer. It is also applied, but to a lesser degree, to other goal sports such as lacrosse and hockey.

8. Based on my understanding in my capacity as Vice President for Marketing, to consumers of athletic clothing, the target consumers for Applicant's goods marked with the mark of this application, UPPER 90 refers to the upper corner zones formed by the crossbar...."

Ms. Harrison's declaration is consistent:

2. I have played soccer and have been involved with organized soccer programs for over two decades, including playing in college and in adult club leagues.

3. I am a long standing purchaser of soccer oriented equipment and clothing.

4. As I understand it, YALE SPORTSWEAR CORPORATION has applied for registration of the trademark UPPER 90.

5. UPPER 90 designates the sweet spot of a goal. That is, the zones of the goal where the crossbar meets the supporting posts in the upper corners. The 90 degrees is not a temperature but an angle, the angle of the top two corners of the goal.

6. Whether UPPER 90, UPPER 90°, UPPER NINETY, or UPPER NINETY°, to me as a consumer of soccer/athletic oriented goods, the connotation and pronunciation are the same.

7. In the field of athletics and particularly soccer, UPPER NINETY with or without the degree symbol "°" has nothing to do with temperature.

8. In my opinion, consumers of athletic clothing, seeing UPPER 90 with or without the degree symbol would not make any difference. They would be identical.

While we do not doubt the declarants' veracity or sincerity, we do not find this evidence persuasive of how the mark would be perceived by the average consumer of applicant's goods. Ms. Nemphos is applicant's director of marketing, and is thus well aware of the intended meaning and commercial impression of the mark. But as we have previously found in a likelihood of confusion analysis, an applicant or registrant's intended interpretation of the mark is not necessarily the same as the consumer's perception of it. *Interpayment Svcs. Ltd. v. Docters & Thiede*, 66 USPQ2d 1463, 1465 (TTAB 2003)("In short, it does not matter what applicant's intentions were in creating its mark or what its characterization of its mark is. The fact remains that the two symbols end up being substantially identical, and that there is no genuine issue of material fact that the public will perceive applicant's mark as the euro symbol.").

Ms. Harrison's viewpoint is likewise not that of the average consumer of the identified goods. By her own admission, she has been involved in the sport of soccer for more than twenty years. She is described in applicant's brief as "a soccer player and coach." App. Br. at 3. As was the case with Ms. Nemphos' statement, the opinion of Ms. Harrison – a player and coach steeped in the game – may well

10

not be indicative of the perception of the average consumer of the identified goods.[6]

Crucial to applicant's argument is that purchasers of its goods are experienced athletes of goal sports – soccer players in particular – who are familiar with the term UPPER 90 (or UPPER 90°), and would recognize the two to be equivalent. But as the examining attorney correctly points out, we must consider the goods <u>as identified in the application</u>. *Cf. In re Elbaum*, 211 USPQ 639, 640 (TTAB 1981)(likelihood of confusion). The application at issue here has no limitations as to the classes of consumers, channels of trade, or intended uses for the goods. Indeed, purchasers of many of applicant's goods need not be soccer cognoscenti or even athletes; "t-shirts, shirts, tanktops, pants, shorts, [and] sweatshirts" are commonly purchased by the general public for non-athletic use. Accordingly, we may not presume that applicant's purchasers are soccer players or athletes. Instead, we consider the marks from the viewpoint of the general public, including both athletes

---

[6] To the extent Ms. Harrison's declaration expresses her perception or opinion, rather than facts of which she has first-hand knowledge, *see, e.g.,* Harrison Dec. ¶ 8 ("In my opinion, customers ... seeing UPPER 90 with or without the degree symbol would not make any difference."), it is entitled to relatively little weight. The opinion of one person – no matter how sincere – on the ultimate issue in this case is of little importance, especially when that person does not appear to be representative of all relevant purchasers. While survey evidence is not required, declarations such as Ms. Harrison's are not an adequate substitute for a survey. We therefore cannot assign Ms. Harrison's opinions any more significance than that of a single

and non-athletes. There is no evidence in this record to indicate that members of the general public are familiar with the term "Upper 90" or "Upper 90°," let alone view them as "substantially exact."

## Conclusion

After careful consideration, we find that applicant's drawing of the mark is not a substantially exact representation of the mark as used in commerce. Trademark Rule 2.51(b).

*Decision:* The refusal to register is accordingly affirmed.

---

individual.