# United States Court of Appeals
# for the Federal Circuit

---

**IN RE: LOUISIANA FISH FRY PRODUCTS, LTD.,**
*Appellant*

---

2013-1619

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board, in No. 77816809.

---

Decided: August 14, 2015

---

RONALD BENNETT FORD, JR., Roy, Kiesel, Ford, Doody & Thurman, Baton Rouge, LA, argued for appellant. Also represented by ALANA ODOM FERNANDEZ.

THOMAS L. CASAGRANDE, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Michelle K. Lee. Also represented by NATHAN K. KELLEY, CHRISTINA J. HIEBER.

---

Before NEWMAN, REYNA, and HUGHES, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* REYNA.

Concurring opinion filed by *Circuit Judge* NEWMAN.

REYNA, *Circuit Judge.*

Louisiana Fish Fry Products, Ltd. ("Louisiana Fish Fry") appeals the Trademark Trial and Appeal Board's (the "Board") decision affirming the refusal to register the mark LOUISIANA FISH FRY PRODUCTS BRING THE TASTE OF LOUISIANA HOME! without a disclaimer of FISH FRY PRODUCTS. Because substantial evidence supports the Board's finding that Louisiana Fish Fry has not established that FISH FRY PRODUCTS has acquired distinctiveness, we *affirm*.

BACKGROUND

Louisiana Fish Fry filed a use-based application with the Patent and Trademark Office ("PTO") for the mark LOUISIANA FISH FRY PRODUCTS BRING THE TASTE OF LOUISIANA HOME!, and the design shown below.



Louisiana Fish Fry identified the following goods for the mark: "Marinade; Sauce mixes, namely barbecue shrimp sauce mix; Remoulade dressing; Cocktail sauce, Seafood sauce; Tartar sauce; Gumbo file; and Cayenne pepper." During prosecution, the Examining Attorney refused to

register the mark absent a disclaimer of FISH FRY PRODUCTS on the basis that this term is not independently registrable.

Louisiana Fish Fry argued that a disclaimer of FISH FRY PRODUCTS was not necessary because the term was both not generic and it had acquired distinctiveness. In support of this position, Louisiana Fish Fry submitted a declaration of its President, William Pizzolato, stating that Louisiana Fish Fry had been using LOUISIANA FISH FRY PRODUCTS for at least thirty years. Mr. Pizzolato also provided sales and advertising data for products bearing the mark LOUISIANA FISH FRY PRODUCTS. Louisiana Fish Fry further contended that its other registrations containing LOUISIANA FISH FRY PRODUCTS also showed that FISH FRY PRODUCTS had acquired distinctiveness.

The Examining Attorney maintained the requirement to disclaim FISH FRY PRODUCTS, asserting that the term was generic. Citing numerous articles and recipes, the Examining Attorney asserted that the relevant public understands "fish fry" to identify fried fish meals. The dictionary definition of "products" indicated that the relevant public understands this word to mean "the goods or services produced by a company." Combining these findings, the Examining Attorney found FISH FRY PRODUCTS to be generic because the cited evidence indicated that the relevant public understood the term to refer to sauces, marinades and spices used on or with fish fries or fried fish.

In the alternative, the Examining Attorney noted that FISH FRY PRODUCTS is, at least, "highly descriptive," thus elevating the burden Louisiana Fish Fry had to meet to show acquired distinctiveness. The Examining Attorney concluded that Louisiana Fish Fry failed to carry its burden because the evidence it submitted only related to

the term LOUISIANA FISH FRY PRODUCTS, not specifically to FISH FRY PRODUCTS. Louisiana Fish Fry's other registrations were similarly insufficient because the phrase FISH FRY PRODUCTS was disclaimed in these prior registrations. The Examining Attorney thus maintained that, even if the term was not generic, it was still not registrable because Louisiana Fish Fry failed to show that it had acquired distinctiveness.

On appeal, the Board affirmed. *In re La. Fish Fry Prods., Ltd.*, No. 77816809 (T.T.A.B. 2013) ("*Board Op.*"). First addressing genericness, the Board determined that the genus of the goods at issue is "sauces, marinades and spices," and that clear evidence established that the relevant public understands FISH FRY PRODUCTS to "identify a type of sauce, marinade or spice used for fish fries." *Id.* at *7–8. The Board agreed with the Examining Attorney that the record evidence showed that the relevant public understands "fish fry" to refer to fried fish meals. *Id.* at *8–16. Quoting a dictionary definition, the Board further found that the relevant public understands "products" to mean, *inter alia*, "something produced; especially: COMMODITY (2): something . . . that is marketed or sold as a commodity." *Id.* at *8 (citing Merriam-Webster Online (Merriam-webster.com)) (ellipsis in the *Board Op.*). The Board determined that FISH FRY PRODUCTS is generic because "fish fry" and "products" retain their "generic significance" when combined. *Board Op.* at *17.

The Board also affirmed the Examining Attorney's conclusion that Louisiana Fish Fry failed to carry its burden of showing that FISH FRY PRODUCTS has acquired distinctiveness. *Id.* at *27. The evidence that Louisiana Fish Fry submitted only related to the mark LOUISIANA FISH FRY PRODUCTS, and not specifically to FISH FRY PRODUCTS. *Id*. at *27. The Board thus affirmed the Examining Attorney's refusal to register

LOUISIANA FISH FRY PRODUCTS BRING THE TASTE OF LOUISIANA HOME! without a disclaimer of FISH FRY PRODUCTS. *Id.* at \*28.

## DISCUSSION

Louisiana Fish Fry challenges the PTO's requirement that it must disclaim FISH FRY PRODUCTS as a condition for registering the mark LOUISIANA FISH FRY PRODUCTS BRING THE TASTE OF LOUISIANA HOME!. Specifically, Louisiana Fish Fry contends that the PTO failed to meet its burden to establish that the term FISH FRY PRODUCTS is generic and that the term has acquired distinctiveness.

We review the Board's legal conclusions de novo and its factual determinations for substantial evidence. *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 1344 (Fed. Cir. 2001). Genericness and acquired distinctiveness are factual determinations that we review for substantial evidence. *In re 1800Mattress.com IP, LLC*, 586 F.3d 1359, 1361 (Fed. Cir. 2009); *G.H. Mumm & Cie v. Desnoes & Geddes, Ltd.*, 917 F.2d 1292, 1294 (Fed. Cir. 1990). The PTO bears the burden of proving genericness by clear evidence. *In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 828 F.2d 1567, 1571 (Fed. Cir. 1987). The applicant, however, bears the burden of proving acquired distinctiveness. *In re Steelbuilding.com*, 415 F.3d 1293, 1297 (Fed. Cir. 2005). The PTO can condition the registration of a larger mark on an applicant's disclaimer of an "unregistrable component of a mark otherwise registrable." 15 U.S.C. § 1056(a); *In re Stereotaxis, Inc.*, 429 F.3d 1039, 1041 (Fed. Cir. 2005). Disclaiming unregistrable components prevents the applicant from asserting exclusive rights in the disclaimed unregistrable terms. *See In re Wada*, 194 F.3d 1297, 1301 (Fed. Cir. 1999).

Section 2(e)(1) of the Lanham Act precludes registration of a mark that "when used on or in connection with

the goods of the applicant is merely descriptive . . . of them ." 15 U.S.C. § 1052(e)(1). Some descriptive marks can, however, acquire distinctiveness and may be registrable on that basis. 15 U.S.C. § 1052(f). A generic mark, being the "ultimate in descriptiveness," cannot acquire distinctiveness. *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 989 (Fed. Cir. 1986).

We do not need to reach the Board's genericness determination because we hold that substantial evidence supports the Board's determination that Louisiana Fish Fry failed to show that FISH FRY PRODUCTS has acquired distinctiveness. In general, to establish that a term has acquired distinctiveness, "an applicant must show that in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1379 (Fed. Cir. 2012) (internal quotation marks omitted). To meet this burden, the applicant can cite evidence such as advertising expenditures and sales success, and length and exclusivity of use. *Id.* Here, the Board noted that because FISH FRY PRODUCTS is "highly descriptive," Louisiana Fish Fry faces an elevated burden to establish acquired distinctiveness. *Board Op.* at *20. The Board concluded that Louisiana Fish Fry had not carried this burden because the evidence that it cited did not relate specifically to the term at issue, i.e., FISH FRY PRODUCTS. *Id.* at *27–28.

On appeal, Louisiana Fish Fry does not challenge the Board's finding that the term FISH FRY PRODUCTS is highly descriptive. Rather, Louisiana Fish Fry argues that the Board erred by considering each piece of evidence that it cited separately in a vacuum, not as a whole. Appellant Br. 20–21. Louisiana Fish Fry also argues that the Board improperly disregarded other registrations because the term FISH FRY PRODUCTS had been dis-

claimed in some of those registrations. *Id.* at 26–27. Finally, Louisiana Fish Fry argues that the Board ran afoul of the "reasoned decisionmaking" doctrine because its previous determination allegedly conflicts with its determination in *Kellogg Co. v. General Mills Inc.*, No. 91125884 (T.T.A.B. 2007). *Id.* at 22–26.

The PTO responds that the Board correctly found that none of Louisiana Fish Fry's evidence relates specifically to the public's understanding of the term FISH FRY PRODUCTS. Appellee Br. 36–37. Louisiana Fish Fry's prior registrations similarly do not evidence source-identifying capability because they include other words beyond FISH FRY PRODUCTS. *Id.* at 40–42. The "reasoned decisionmaking" doctrine does not, according to the PTO, control in this case because that doctrine applies for different decisions based on the same legal standard, and the relevant standards for this case and *Kellogg* are different. *Id.* at 37–40.

Substantial evidence supports the Board's conclusion that Louisiana Fish Fry has not established that FISH FRY PRODUCTS has acquired distinctiveness. To show that FISH FRY PRODUCTS had acquired distinctiveness, Louisiana Fish Fry provided two declarations from its President, Mr. Pizzolato, and five registrations that include the term FISH FRY PRODUCTS. In his first declaration, Mr. Pizzolato states that FISH FRY PRODUCTS has become distinctive through Louisiana Fish Fry's "substantially exclusive and continuous use" of the mark for at least the last five years. J.A. 103. Although Section 2(f) of the Lanham Act, 15 U.S.C. § 1052(f), provides that that the PTO may accept five years of "substantially exclusive and continuous" use as *prima facie* evidence of acquired distinctiveness, the statute does not require the PTO to do so. Particularly for a mark that is as highly descriptive like FISH FRY PRODUCTS, the Board was within its discretion not to accept Louisiana

Fish Fry's alleged five years of substantially exclusive and continuous use as *prima facie* evidence of acquired distinctiveness.

In his second declaration, Mr. Pizzolato stated that "[o]ver the past thirty (30) years, we have used the mark LOUISIANA FISH FRY PRODUCTS on a wide variety of food products." J.A. 464. Mr. Pizzolato also provided Louisiana Fish Fry's gross sales figures for food products bearing LOUISIANA FISH FRY PRODUCTS for 2007– 2010. J.A. 465. According to Mr. Pizzolato, from 2009 to 2011 Louisiana Fish Fry also expended over $ 2.4 million on advertising bearing LOUISIANA FISH FRY PRODUCTS. J.A. 466. As the PTO points out, however, all of these data involve uses of LOUISIANA FISH FRY PRODUCTS, and thus do not establish that FISH FRY PRODUCTS has acquired distinctiveness. *In re Chem. Dynamics, Inc.*, 839 F.2d 1569, 1571 (Fed. Cir. 1988).

Similarly Louisiana Fish Fry's reliance on other registrations that include the term FISH FRY PRODUCTS is misplaced. Contrary to Louisiana Fish Fry's contentions, the Board thoroughly considered these registrations. The Board correctly determined that none of these marks indicate that FISH FRY PRODUCTS has acquired distinctiveness. Three of those registrations, nos. 2794015, 2827057, and 2827571, are for the same mark as the one at issue here, i.e., LOUISIANA FISH FRY PRODUCTS BRING THE TASTE OF LOUISIANA HOME!. The remaining registrations, nos. 28018982 and 2827058, are for the mark LOUISIANA FISH FRY PRODUCTS. Thus, viewed separately or as a whole, Louisiana Fish Fry's evidence does not establish that the specific term at issue here, FISH FRY PRODUCTS, has acquired distinctiveness.

Finally, we agree with the PTO that the Board's decision did not run afoul of the "reasoned decisionmaking"

doctrine. Under this doctrine, courts will set aside an agency's decision if it is not "supported by the reasons that the agenc[y] adduce[s]." *Allentown Mack Sales & Serv., Inc. v. N.L.R.B.*, 522 U.S. 359, 374 (1998). The Board, however, provided detailed reasons for why it determined that FISH FRY PRODUCTS has not acquired distinctiveness, and Louisiana Fish Fry does not argue to the contrary. Even if the Board's decision contradicted *Kellogg*, which it does not, Louisiana Fish Fry has failed to explain how such a conflict implicates the reasoned decisionmaking doctrine.

CONCLUSION

We hold that substantial evidence supports the Board's determination that Louisiana Fish Fry did not carry its burden of showing that FISH FRY PRODUCTS acquired distinctiveness. On that basis, the PTO's decision refusing to register LOUISIANA FISH FRY PRODUCTS BRING THE TASTE OF LOUISIANA HOME! absent a disclaimer of FISH FRY PRODUCTS is *affirmed*.

**AFFIRMED**

COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: LOUISIANA FISH FRY PRODUCTS, LTD.,**
*Appellant*

---

2013-1619

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board, in No. 77816809.

---

NEWMAN, *Circuit Judge,* concurring in the result.

I agree that registration was properly denied.[1] However, I would sustain the denial on the principal ground relied on by the Trademark Trial and Appeal Board ("Board"); that is, that the Applicant should disclaim any exclusive right to "fish fry products" because the term is the generic and common descriptive name for these products.

I do not share my colleagues' view that there simply was inadequate evidence of acquired distinctiveness. Generic terms and common descriptive names cannot acquire trademark status, and evidence purporting to show acquired distinctiveness or secondary meaning is irrelevant.

---

[1]    *In re Louisiana Fish Fry Prods. Ltd.*, 2013 WL 3191197 (T.T.A.B. 2013) ("Board. Op.").

The Board's ruling that the phrase "fish fry products" is a generic or common descriptive name for the products for which registration is sought is not incorrect, and the required disclaimer is well within the Board's discretionary authority. I would affirm the Board's decision on this ground, and thus concur in the judgment of affirmance of denial of registration absent the disclaimer that was requested by the examiner and affirmed by the Board.

## DISCUSSION

The Board conditionally approved the application to register the phrase "EST. 1982 LOUISIANA FISH FRY PRODUCTS BRING THE TASTE OF LOUISIANA HOME!" including design elements, on the applicant's disclaimer of any exclusive right in the term "fish fry products." The applicant refused to file this disclaimer.

The Board, applying §6(a) of the Lanham Trademark Act, 15 U.S.C. §1056(a), explained the disclaimer requirement and its long-standing precedent:

> "As used in trademark registrations, a disclaimer of a component of a composite mark amounts merely to a statement that, in so far as that particular registration is concerned, no rights are being asserted in the disclaimed component standing alone, but rights are asserted in the composite; and the particular registration represents only such rights as flow from the use of the composite mark."

Board Op. at *2 (quoting *Sprague Electric Co. v. Erie Resistor Corp.*, 101 USPQ 486, 486-87 (Comm'r Pats. 1954)). Trademark registration may be refused based on failure to comply with a proper requirement for disclaimer. *In re Stereotaxis Inc.,* 429 F.3d 1039 (Fed. Cir. 2005); *In re Richardson Ink Co.*, 511 F.2d 559 (C.C.P.A. 1975); *In re Pendleton Tool Indus., Inc.,* 157 U.S.P.Q. 114 (T.T.A.B. 1968). Here, the required disclaimer arose from the

examiner's and the Board's conclusion that "fish fry products" is a generic or common descriptive term; this is the foundation of this appeal.

A

Trademark status on the ground of acquired distinctiveness, provided by Section 2(f) of the Lanham Act, 15 U.S.C. §1052(f), is not available to terms that are the generic or common descriptive name of the goods, for such terms are not amenable to exclusive rights. The panel majority's focus solely on "acquired distinctiveness" presupposes that trademark status is here available; that is, that "fish fry products" is not a generic or common descriptive name for these products, and would not be so recognized by the consuming public.

When a term is the common descriptive or generic name of the goods, "evidence of secondary meaning cannot change the result." *In re Northland Aluminum Prods., Inc.*, 777 F.2d 1556, 1560 (Fed. Cir. 1985). Thus the court must first determine whether the Board was correct in finding that "fish fry products" is a generic term or common descriptive name, for only if that finding is incorrect does the question arise of acquired distinctiveness.

The panel majority, directing appellate review solely to the question of acquired distinctiveness, necessarily presupposes that "fish fry products" is not a generic or common descriptive name, for "[g]eneric terms cannot be rescued by proof of distinctiveness or secondary meaning no matter how voluminous the proffered evidence may be." *Northland Aluminum,* 777 F.2d at 1558. This is the established rule, for generic terms by definition are incapable of indicating a unique source. *See In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 828 F.2d 1567, 1569 (Fed. Cir. 1987) ("Generic terms, by definition incapable of indicating source, are the antithesis of trademarks, and can never attain trademark status." (citing *Dan Robins &*

*Assocs., Inc. v. Questor Corp.*, 599 F.2d 1009, 1014 (C.C.P.A. 1979))).

Section 6(a) of the Lanham Act, 15 U.S.C. §1056(a), authorizes the Patent and Trademark Office to "require the applicant to disclaim an unregistrable component of a mark otherwise registrable." *See In re Hiromichi Wada*, 194 F.3d 1297, 1301 (Fed. Cir. 1999) ("Disclaimer of generic terms in composite marks allows marks containing generic terms to be registered as a whole while preventing any exclusive rights in the generic terms themselves."). Acting within this authority, the Board advised the applicant as follows:

> A proper disclaimer reads as follows: "No claim is made to the exclusive right to use FISH FRY PRODUCTS apart from the mark as shown."

Board Op. at *14 n.18 (extending time for filing disclaimer). The applicant declined.

## B

The applicant challenges the Board's requirement for disclaimer, stating that the Board did not meet its burden of proving by "clear evidence" that the phrase "fish fry products" is generic, and that other errors were made.

When a fact is required to be found by clear evidence and not a mere preponderance, appellate review of whether an agency finding is supported by substantial evidence will "take this heightened burden into account." *In re Hotels.com, L.P.*, 573 F.3d 1300, 1302 (Fed. Cir. 2009). Here, we need not decide whether to take a heightened burden into account, for on either standard the Board's decision must be sustained.

The applicant identified its products as "Marinade; Sauce mixes, namely, barbecue shrimp sauce mix; Remoulade dressing; Cocktail sauce, Seafood sauce; Tartar sauce; Gumbo filé; and Cayenne pepper." J.A. 36. The

Board applied the two-step inquiry set forth in *Marvin Ginn,* first to determine the genus or class of the goods at issue, and second to determine whether the term is "understood by the relevant public primarily to refer to that genus of goods." *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 990 (Fed. Cir. 1986).

The Board found the phrase "fish fry products" to be "the combination of two generic terms, 'Fish Fry' and 'Products,' joined to create a compound term." Board Op. at *8. Citing dictionaries and published articles, the Board stated "there is no dispute that the term 'Fish Fry' is a unitary term that means fried fish." *Id.* The Board found that, as used in "fish fry products," the word "products" has the dictionary definition of "something produced" and is without source-identifying capability. *Id.* Thus the Board found the phrase "fish fry products" to be a generic or common descriptive term for products used with fried fish:

> Based on the record described below, we find that there is clear evidence to support a finding that the relevant public, when it considers FISH FRY PRODUCTS in conjunction with sauces, marinades and spices, readily understands the term to identify a type of sauce, marinade or spice used for fish fries.

Board Op. at *4. The Board explained that "used for fish fries" defines the understanding of the relevant public for the goods subject to the proposed trademark. *Id.*

The applicant does not dispute the Board's definition of its goods, and states: "In the present matter, the Board correctly identified the genus of the goods as 'marinades, sauces, and spices.'" Reply Br. at 1. The applicant also does not dispute the Board's description of the relevant public as "ordinary consumers who eat fried fish." However, the applicant states that the Board committed legal

error because it found that "fish fry products" is generic only for these goods when used with fried fish.

The applicant argues that the phrase "fish fry products" was improperly separated by the Board into "fish fry" and "products," whereas the term is a composite mark of the entire phrase. The applicant argues that the whole is greater than the sum of its parts. It is indeed appropriate, when determining whether a mark is generic, to assess the mark as a whole. *See Marvin Ginn*, 782 F.2d at 990–91. When the words form a composite phrase, the inquiry is whether the words as joined have the same meaning as in their separate common usage. *See, e.g., In re Hotels.com,* 573 F.3d at 1303–05 (reviewing the mark "viewed in its entirety" as well as the meaning of the individual words).

The Board found that the phrase "fish fry products" is composed of words in "ordinary grammatical construction" and that each component word retains its common meaning in the combination. It was not reasonably argued that "fish fry products" as a phrase would be understood by the consuming public to have a meaning different from the meaning imparted by the separate words. The Board cited the examiner's record of extensive usage of the words "fish fry" and "products," and concluded that the phrase "fish fry products" does not and cannot indicate a single source of these products used with fried fish.

The Board responded to all of the applicant's arguments, and supported the conclusion that the consuming public would understand "fish fry products" as a generic or common descriptive term for products used with fried fish, including sauces, marinades and spices. The Board's finding should be affirmed. On this finding, the phrase "fish fry products" does not have trademark status and cannot acquire trademark status.

## C

The Board, to meet the obligation of agency completeness, discussed the applicant's argument of acquired distinctiveness, and found it lacking. This discussion does not avoid our appellate obligation to review the Board's finding that "fish fry products" is a generic and common name, and does not limit the issue to that of acquired distinctiveness.

My colleagues hold that they do "not need [to] reach the Board's genericness determination because . . . substantial evidence supports the Board's determination that Louisiana Fish Fry failed to show that FISH FRY PRODUCTS has acquired distinctiveness." Maj. Op. at 6. However, a decision on this ground presupposes that the term "fish fry products" could achieve trademark status based on acquired distinctiveness.

Lanham Act section 2(f) requires establishing that the term is not a generic or common descriptive name, in order to achieve registration based on evidence of acquired distinctiveness. A trademark serves to "identify and distinguish" the applicant's goods from the goods of others and "indicate the source of the goods." Lanham Act §§ 2 & 45, 15 U.S.C. §§ 1032 & 1127. Terms that are the generic or common descriptive name of the goods do not perform this role. "A generic term is the common descriptive name of a class of goods or services, and . . . can never be registered as a trademark." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985).

The question on appeal requires resolution of whether "fish fry products" is a generic or descriptive common name for the products with which the term is associated, for if "fish fry products" is in the different legal category of "merely descriptive," trademark status is a matter of weight and probative value of evidence of acquired distinctiveness. If this is the court's ruling with respect to

"fish fry products" it should be clearly stated, so that the applicant can rely on it.

## CONCLUSION

Only if the Board's finding of generic or common descriptive name is incorrect, does the factual question of acquired distinctiveness become relevant to trademark registration. I conclude that the Board did not err, and that the disclaimer of "fish fry products" was properly imposed. I would affirm the Board's decision, on that ground.