This Opinion Is a
Precedent of the TTAB

Mailed: June 6, 2017

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re University of Miami*

————

Serial No. 86616382

————

Duane M. Byers of Nixon & Vanderhye P.C.,
    for University of Miami.

J. Brendan Regan, Trademark Examining Attorney, Law Office 113,
    Odette Bonnet, Managing Attorney.

————

Before Ritchie, Hightower, and Heasley,
    Administrative Trademark Judges.

Opinion by Hightower, Administrative Trademark Judge:

The University of Miami ("Applicant") seeks registration on the Principal Register of the mark shown at right. The description of the mark states: "The mark consists of an ibis wearing a hat and a sweater."



The application identifies the following goods and services (as amended):

> Paper products, namely, stationery, note pads, napkins, bumper stickers, notebooks, pocketed folders, binders, souvenir programs concerning athletic events and educational speakers, newsletters in the field of educational matters, decals, calendars, greeting cards, post cards, note cards, day planners, and gift bags; pens, in International Class 16;

> Clothing, namely, t-shirts, sweatshirts, shirts, pants, jackets, shorts, vests, jerseys, neckties, bowties, socks, aprons, bibs not of paper, underwear, rainwear, belts, scarves, swimwear, tank tops, dresses, skirts, rompers, pajamas, sweaters, headbands, gloves; hats; footwear, in International Class 25; and

> Educational and entertainment services, namely, providing courses of instruction at the college level, offering a wide array of intercollegiate sports exhibitions, and producing radio and television programs; entertainment services in the nature of a wide array of intercollegiate sporting competitions and sporting events, and organizing cultural events, in International Class 41.[1]

The Trademark Examining Attorney has refused registration under Sections 1 and 45 of the Trademark Act, 15 U.S.C. §§ 1051 and 1127, on the grounds that none of Applicant's specimens show use in commerce of the mark appearing in the drawing, and that Applicant seeks registration of more than one mark in its application.

After the Trademark Examining Attorney made the refusal final, Applicant appealed to this Board and requested reconsideration. After reconsideration was denied, the appeal resumed.[2] We reverse the refusal to register as to both grounds.

---

[1] Application Serial No. 86616382 was filed April 30, 2015 under Trademark Act Section 1(a), 15 U.S.C. § 1051(a), based on Applicant's claim of first use anywhere and in commerce since at least as early as April 2000 for the goods and 1926 for the services. Color is not claimed as a feature of the mark.

[2] We note that neither Applicant's appeal brief nor its reply brief is double-spaced, in contravention of Trademark Rules 2.126(a)(1) and 2.142(b)(2), 37 C.F.R. §§ 2.126(a)(1) and

I. Whether Applicant's Specimens Show Use of the Applied-For Mark

Trademark Act Section 1(a)(1), 15 U.S.C. § 1051(a)(1), requires an applicant to submit specimens of its mark as used; *see also* Trademark Rules 2.34(a)(1)(iv), 37 C.F.R. § 2.34(a)(1)(iv), and 2.56(a), 37 C.F.R. § 2.56(a) ("An application under section 1(a) of the Act . . . must [ ] include one specimen per class showing the mark as used on or in connection with the goods or services."). An applicant also is required to submit a drawing, which "must be a substantially exact representation of the mark as used on or in connection with the goods and/or services." Trademark Rule 2.51(a), 37 C.F.R. § 2.51(a).

Under our precedent, a drawing displaying only a "minor alteration" of the mark that "does not create a new and different mark creating a different commercial impression" from the matter shown in the specimens is acceptable. *In re Schechter Bros. Modular Corp.*, 182 USPQ 694, 695 (TTAB 1974); *see also In re Frankish Enters. Ltd.*, 113 USPQ2d 1964, 1974 (TTAB 2015) (quoting *Schechter*). "[T]he determination of whether a mark shown in the drawing is a substantially exact representation of the mark shown on the specimen is 'assuredly a subjective one.'" *In re wTe Corp.*, 87 USPQ2d 1536, 1539 (TTAB 2008) (quoting *In re R.J. Reynolds Tobacco Co.*, 222 USPQ 552, 552 (TTAB 1984)). Indeed, "each case presents its own unique circumstances and requires a judgment as to that particular designation." *In re 1175856 Ontario Ltd.*, 81 USPQ2d 1446, 1448 (TTAB 2006).

---

2.142(b)(2). We have exercised our discretion to consider Applicant's briefs because it appears that they would fall within the applicable page limits had they been double-spaced. Nonetheless, compliance with the Trademark Rules of Practice is expected.

The applied-for mark portrays Applicant's mascot, "Sebastian the Ibis."[3] It appears to be depicted similarly in each of the 17 original specimens submitted with the application, except the footwear specimens, which show only part of the mark. Following are enlarged excerpts from representative specimens for each of the three classes of goods and services in the application:






---

[3] *See* specimens submitted April 30, 2015, at TSDR 15, 17.



To the extent the specimens are clearly visible in the record, the mark as used on each differs from the mark in the drawing in the following ways: The stylized letter "U" appears in the center of the hat; the word "Miami" is displayed on the front of the sweater; and the sweater has striping along the side and shoulders.[4] As noted, we must determine whether the mark as shown in the drawing is a substantially exact

---

[4] Applicant submitted five more specimens showing a stripeless sweater with its request for reconsideration, characterizing them as additional rather than substitute specimens. *See* Request for Reconsideration, 4 TTABVUE 1, 7-11; Reply Brief at 1-3, 10 TTABVUE 2-4. Applicant stated in the request that the specimens "were in existence when the application was filed" and submitted a declaration referencing the original specimens, 4 TTABVUE 1, 5, but did not verify that the subsequent specimens were in use in commerce at least as early as the filing date. Therefore, we have given these specimens no consideration.

representation of the mark shown in the specimens, that is, if they "are basically the same marks creating the same impressions." *Schechter*, 182 USPQ at 695.

We begin with the literal portions of the specimens, the letter "U" and the word "Miami." The Examining Attorney argues that the "U" design is inherently distinctive, appears with a registration symbol ® on some of the specimens, and is used by Applicant as a standalone mark on several of them, including the last specimen shown above (titled "Get to know the U"). With respect to "Miami," the Examining Attorney argues: "Although not inherently distinctive for goods and services emanating from the city of Miami, the word MIAMI is nevertheless search-worthy during examination and is fully capable of functioning as an indicator of source."[5]

In determining this issue, we turn to the cases involving "mutilation" of a trademark because, in effect, the Examining Attorney is asserting that by omitting the lettering and the stripes on Sebastian's sweater from the drawing, Applicant has mutilated its mark by severing part of it and seeking registration only of that part. We must decide: What exactly is the "trademark," and does the designation for which registration is sought comprise a separate and distinct "trademark" in and of itself? *Institut National des Appellations D'Origine v. Vintners Int'l Co.*, 958 F.2d 1574, 22 USPQ2d 1190, 1197 (Fed. Cir. 1992); 3 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 19:59 (4th ed. 2017).

---

[5] Examiner's Brief (titled "Examiner's Statement"), 9 TTABVUE 6-7.

An applicant has some latitude in selecting the mark it wants to register. *In re 1175856 Ontario Ltd.*, 81 USPQ2d at 1448. It is well-settled that an applicant may seek to register any portion of a composite mark if that portion presents a separate and distinct commercial impression that indicates the source of the applicant's goods or services and distinguishes them from the goods and services of others. *See In re Chem. Dynamics Inc.*, 839 F.2d 1569, 5 USPQ2d 1828, 1829 (Fed. Cir. 1988). If the portion of the mark sought to be registered does not create a separate and distinct commercial impression, the result is an impermissible mutilation of the mark as used. *In re 1175856 Ontario Ltd.*, 81 USPQ2d at 1448.

We have found that a design may be registered separately if it creates a commercial impression separate from accompanying words. *See, e.g.*, *In re Frankish*, 113 USPQ2d at 1974 (holding design configuration of monster truck



registrable separately from wording JURASSIC ATTACK on vehicle); *In re Nat'l Inst. for Auto. Serv. Excellence*, 218 USPQ 744, 745



(TTAB 1983) (reversing refusal to register meshed gear design        where

specimens showed use of mark as ![gear shaped design with "CERTIFIED GENERAL MECHANIC" text], finding design to create "a visual impact separate and apart from the words superimposed thereon"); *In re Sterno, Inc.*, 137 USPQ 328 (TTAB 1963) (finding subject matter of application to register

![cartoon bear holding a blank can] creates a commercial impression separate and apart from applicant's word mark STERNO and other matter appearing on label in specimen

![cartoon bear holding a Sterno can] ); *cf. In re Big Pig Inc.*, 81 USPQ2d 1436 (TTAB 2006) (holding word PSYCHO registrable apart from accompanying words and designs in specimen

).

Bearing these precedents in mind, we find that the design mark Applicant seeks

to register  creates a separate and distinct commercial impression from the wording "U" and "Miami" appearing on the specimens. Although the specimens of use include literal elements displayed on the clothing – not, for example, to the side of the mark, or above or below it – in this particular instance, it is our judgment that the overall display on the specimens creates the commercial impression of a personified ibis. Further, as with the wording in *In re Frankish*, the design "predominates over the words" which are "minor alterations," separable from the design portion of the mark. *Id.*, 113 USPQ2d at 1974.

With regard to the absence of stripes on the sweater in Applicant's drawing, we view this to be a minor alteration that does not create a new and different mark with a different commercial impression from the matter shown in the specimens. Nor does it have any significance for the scope of Applicant's statutory rights in its applied-for mark, which are based on its drawing. *See In re Frankish*, 113 USPQ2d at 1974 (finding additional markings on specimens consisting of "stylized gills or stripes" to be minor alterations that do not create a new mark with a different commercial impression).

Accordingly, we find that the drawing is a substantially exact representation of Applicant's mark as it is actually used.

## II.   Whether Applicant Seeks to Register Multiple Marks

We turn now to the second, and related, ground for refusal: that Applicant is attempting to register more than one mark, that is, a mark with "phantom" elements. The Examining Attorney explains: "In the instant case, the applicant wishes to register a design consisting of a stylized ibis wearing a sweater that operates as a blank slate for whatever additional elements the applicant, in its sole discretion, sees fit to include."[6] Applicant responds that it "is simply trying to register a stylized Ibis that is standing like a human and that is wearing a hat and a sweater."[7]

Our primary reviewing court, the U.S. Court of Appeals for the Federal Circuit, has defined a phantom mark as "one in which an integral portion of the mark is generally represented by a blank or dashed line acting as a placeholder for a generic term or symbol that changes, depending on the use of the mark." *In re Int'l Flavors & Fragrances Inc.*, 183 F.3d 1361, 51 USPQ2d 1513, 1514 n.1 (Fed. Cir. 1999). Phantom elements can be, for example, a date, a model number, or a telephone prefix or area code that is subject to change. *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 57 USPQ2d 1807, 1813 (Fed. Cir. 2001); *In re Primo Water Corp.,* 87 USPQ2d 1376, 1378 (TTAB 2008); *Cineplex Odeon Corp. v. Fred Wehrenberg Circuit of Theatres Inc.*, 56 USPQ2d 1538, 1539 (TTAB 2000).

Under the Trademark Act, however, "a trademark application may only seek to register a *single* mark." *Int'l Flavors*, 51 USPQ2d at 1516. A mark that contains a

---

[6] Examiner's Statement, 9 TTABVUE 9.

[7] Reply Brief at 5, 10 TTABVUE 6.

changeable or phantom element generally is considered to be more than one mark. *Primo Water*, 87 USPQ2d at 1378. Registration of phantom marks is prohibited because they do not disclose the designation used to identify and distinguish the goods covered by the mark, which makes it impossible to conduct an effective search. *Int'l Flavors*, 51 USPQ2d at 1517.

> "Phantom" marks with missing elements . . . encompass too many combinations and permutations to make a thorough and effective search possible. The registration of such marks does not provide proper notice to other trademark users, thus failing to help bring order to the marketplace and defeating one of the vital purposes of federal trademark registration.

*Id.* at 1517-18 (footnote omitted).

In this case, neither the drawing nor the mark description ("The mark consists of an ibis wearing a hat and a sweater.") identifies a changeable or missing element in Applicant's mark. Rather, the refusal arises from Applicant's depiction in its specimens of "U" on the ibis's hat and "Miami" on its sweater. Applicant states that it also "sometimes places miami [sic], U, M, or HURRICANES on the sweater or hat."[8] Applicant compares its use to the *Dial-A-Mattress* case because "the possible permutations are limited."[9]

In order to determine whether Applicant is seeking to register a phantom mark, we must decide whether these terms are integral to Applicant's mark. We find that they are not. As discussed *supra*, the literal elements appearing on the sweater and

---

[8] Reply Brief at 4, 10 TTABVUE 5.

[9] *Id.* at 5, 10 TTABVUE 6.

the hat in Applicant's specimens, including the initial U and name MIAMI, are not generic terms, but independent indicators of source. Applicant claims no rights to any wording in either the drawing or the mark description. We do not find *Dial-A-Mattress* to be on point here because Applicant has not applied to register a series of marks, or a mark with dashes or a blank space reserved for a term; rather, the applied-for mark incorporates no wording whatsoever. A registration of the ibis design covers only that mark as shown on the drawing, not any house marks or other literal elements Applicant chooses to add to it. Applicant has not applied to register multiple marks.

## III. Conclusion

We have found that Applicant is not attempting to register a "phantom" mark, and its specimens are sufficient to show use of its mark in commerce.

**Decision**: The refusal to register Applicant's mark is reversed.